# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP491 |
| COMPLETE TITLE: | AllEnergy Corporation and AllEnergy Silica, Arcadia, LLC, |
| | Petitioners-Appellants-Petitioners, |
| | v. |
| | Trempealeau County Environment & Land Use Committee, |
| | Respondent-Respondent. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 370 Wis. 2d 261, 881 N.W.2d 358
(2016 - Unpublished)

| | |
|---|---|
| OPINION FILED: | May 31, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 11, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Trempealeau |
| JUDGE: | Elliott M. Levine |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ZIEGLER, J. concurs, joined by ROGGENSACK, C.J. (opinion filed) |
| DISSENTED: | KELLY, J. dissents, joined by GABLEMAN, J. and R.G. BRADLEY, J. |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioners-appellants-petitioners, there were briefs filed by *Gary A. Van Cleve* and *Larkin, Hoffman, Daly and Lindgren Ltd.*, Minneapolis, and oral argument by *Gary A. Van Cleve.*

For the respondent-respondent, there was a brief filed by *Ronald S. Stadler*, *Aaron J. Graf* and *Mallery & Zimmerman, S.C.*, Milwaukee, and oral argument by *Ronald Stadler.*

An amici curiae brief was filed on behalf of CSI Sands (Wisconsin) LTD., D/B/A Canadian Silica Industries, Superior

Silica Sands LLC, Mississippi Sand LLC, and High Country Sand LLC by *Anders B. Helquist* and *Weld Riley, S.C.*, Eau Claire.

An amici curiae brief was filed on behalf of Wisconsin Counties Association and Wisconsin Towns Association by *Richard Manthe,* Shawano.

An amici curiae brief was filed on behalf of Wisconsin Realtors Association and Wisconsin Builders Association by *Thomas D. Larson,* Madison.

**2017 WI 52**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP491
(L.C. No. 2013CV245)

STATE OF WISCONSIN : IN SUPREME COURT

**AllEnergy Corporation and AllEnergy Silica, Arcadia, LLC,**

Petitioners-Appellants-Petitioners,

**FILED**

v.

**Trempealeau County Environment & Land Use Committee,**

**MAY 31, 2017**

Respondent-Respondent.

Diane M. Fremgen
Clerk of Supreme Court

---

Review of a decision of the Court of Appeals. *Affirmed.*

¶1 SHIRLEY S. ABRAHAMSON, J.[1] This is a review of an unpublished decision of the court of appeals affirming an order

---

[1] Although four justices agree with the mandate of this opinion that the decision of the court of appeals is affirmed, only Justice Ann Walsh Bradley joins this opinion (which makes it the opinion of two justices). Justice Annette K. Ziegler (joined by Chief Justice Patience D. Roggensack) joins the mandate and writes separately in concurrence. Justice Daniel Kelly (joined by Justice Michael J. Gableman and Justice Rebecca Grassl Bradley) dissents. This opinion is a lead opinion because four justices do not agree with or join its reasoning.

(continued)

of the circuit court for Trempealeau County, La Crosse County Circuit Court Judge Elliott M. Levine, presiding.[2]  The order of the circuit court affirmed the Trempealeau County Environment & Land Use Committee's denial of the conditional use permit application for non-metallic mineral mining submitted by AllEnergy Corporation and AllEnergy Silica, Arcadia, LLC (collectively AllEnergy).  The non-metallic mineral mining in the instant case is mining, processing and transporting silica sand used in hydraulic fracturing (fracking).

¶2   Naming the Trempealeau County Environment & Land Use Committee as respondent, AllEnergy sought certiorari review in the circuit court of the denial of its application for a conditional use permit; appealed the order of the circuit court

---

As Justice Ann Walsh Bradley recently explained in State v. Weber, 2016 WI 96, ¶83 n.1, 372 Wis. 2d 202, 887 N.W.2d 554 (Ann Walsh Bradley, J., dissenting), although "the term 'lead' opinion . . . is undefined in our Internal Operating Procedures, its use here is consistent with past description.  We have said 'that a lead opinion is one that states (and agrees with) the mandate of a majority of the justices, but represents the reasoning of less than a majority of the participating justices.'" (quoting State v. Lynch, 2016 WI 66, ¶143, 371 Wis. 2d 1, 885 N.W.2d 89 (Abrahamson & Ann Walsh Bradley, JJ., concurring in part and dissenting in part) (citing Hoffer Props., LLC v. DOT, 2016 WI 5, 366 Wis. 2d 372, 874 N.W.2d 533)).

[2] AllEnergy Corp. v. Trempealeau County Env't & Land Use Comm., No. 2015AP491, unpublished slip op. (Wis. Ct. App. May 10, 2016).

to the court of appeals; and then sought review of the decision of the court of appeals in this court.[3]

¶3 The issues presented in AllEnergy's brief and addressed by the Trempealeau County Environment & Land Use Committee's brief are the following:

I.   Did the Trempealeau County Environment & Land Use Committee, an appointed body without the power to legislate, exceed its jurisdiction by denying a conditional use permit based on broad legislative concerns over the public health, safety, and welfare?

II.  Did substantial evidence in the administrative record support the denial of a conditional use permit for non-metallic mining?

III. Should the court adopt a new doctrine that a conditional use permit applicant is entitled to the permit where (A) all ordinance conditions and standards are met and (B) additional conditions can be adopted that address potentially-adverse impacts from the use?[4]

---

[3] Briefs were submitted in this court by amici curiae as follows: Joint brief of CSI Sands (Wisconsin) LTD., D/B/A Canadian Silica Industries, Superior Silica Sands LLC, Mississippi Sand LLC, and High Country Sand LLC; Wisconsin Realtors Association and Wisconsin Builders Association; and Wisconsin Counties Association and Wisconsin Towns Association.

[4] Brief of Petitioners-Appellants-Petitioners (AllEnergy) at vi (emphasis added).

AllEnergy's petition for review stated the issues somewhat differently as follows (emphasis added):

I.   Does a conditional use permit ("CUP") applicant have a property right of entitlement to issuance of a CUP when a county zoning committee adopts 37 specific conditions of approval for a CUP, but then denies it based on generalized quasi-legislative concerns?

(continued)

3

¶4 AllEnergy's statement of the third issue is premised on AllEnergy's argument that AllEnergy satisfied, as a matter of law, all the specific conditions in the ordinance and that the Trempealeau County Environment & Land Use Committee cannot require AllEnergy to satisfy "subjective," "generalized" conditions and standards in the ordinance.

¶5 Before we address each issue in turn, we briefly state the certiorari standard of review to provide context for the issues and our decision.

---

II. Do unsubstantiated public comments on the possible negative impacts of a non-metallic mine constitute substantial evidence upon which to base a CUP denial?

III. Should the court adopt a new doctrine that where a CUP applicant has shown that all conditions and standards, both by ordinance and as devised by the zoning committee, have been or will be met, the applicant is entitled to the issuance of the permit?

IV. Did [the Environment & Land Use Committee] exceed its jurisdiction by denying a CUP based upon generalized concerns, reflecting the exercise of policy-based, quasi-legislative authority by a committee whose members are appointed, not elected?

V. In addition to violating the judicial notice statute, did it violate the due process and equal protection rights of the CUP applicant for the courts below to refuse to take mandatory judicial notice of certain governmental documents?

This court's order granting AllEnergy's petition for review limited review to issues II, III, and IV, above.

4

¶6   The first two issues stated above relate to certiorari review of the Trempealeau County Environment & Land Use Committee's decision denying AllEnergy a conditional use permit.[5] A person aggrieved by the denial of a conditional use permit may commence an action seeking the remedy available by certiorari. Wis. Stat. § 59.694(10) (2013-14).[6]

¶7   In the instant certiorari review, the decision of the Trempealeau County Environment & Land Use Committee is accorded a presumption of correctness and validity.[7] Certiorari review is

---

[5] See State ex rel. Skelly Oil Co. v. Common Council, City of Delafield, 58 Wis. 2d 695, 700-701, 207 N.W.2d 585 (1973) (footnote omitted):

Conditional uses or as they are sometimes referred to, special exceptions uses, enjoy acceptance as a valid and successful tool of municipal planning . . . .[A]s flexibility devices, which are designed to cope with situations where a particular use, although not inherently inconsistent with the use classification of a particular zone, [conditional uses] may well create special problems and hazards if allowed to develop and locate as a matter of right in [a] particular zone.

[6] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

"Certiorari is used to test the validity of decisions made by administrative or quasi-judicial bodies." Acevedo v. City of Kenosha, 2011 WI App 10, ¶8, 331 Wis. 2d 218, 793 N.W.2d 500.

[7] See, e.g., Lamar Cent. Outdoor, Inc. v. Bd. of Zoning Appeals of City of Milwaukee, 2005 WI 117, ¶16, 284 Wis. 2d 1, 700 N.W.2d 87; Edward Kraemer & Sons, Inc. v. Sauk Cty. Bd. of Adjustment, 183 Wis. 2d 1, 8, 515 N.W.2d 256 (1994); Sills v. Walworth Cty. Land Mgt. Comm., 2002 WI App 111, ¶6, 254 Wis. 2d 538, 648 N.W.2d 878.

limited to whether the Trempealeau County Environment & Land Use Committee:

1.  Kept within its jurisdiction;

2.  Proceeded on a correct theory of law;

3.  Acted in an arbitrary, oppressive, or unreasonable manner that represented its will and not its judgment; and

4.  Might reasonably make the order or determination in question based on evidence.[8]

¶8   AllEnergy's focus——and therefore our focus and that of the circuit court and court of appeals——is on the first and fourth inquiries on certiorari review.   Nevertheless, we recognize that AllEnergy sometimes seems to fuse its arguments on the first and fourth inquiries in a certiorari review with the third inquiry, namely whether the Trempealeau County Environment & Land Use Committee acted in an arbitrary, oppressive, or unreasonable manner that represented its will, not its judgment.   Our discussion of the first and fourth inquiries demonstrates that the determination of the Committee was not arbitrary, oppressive, or unreasonable:   The Committee

---

[8] <u>Oneida Seven Generations Corp. v. City of Green Bay</u>, 2015 WI 50, ¶41, 362 Wis. 2d 290, 865 N.W.2d 162 (citing <u>Ottman v. Town of Primrose</u>, 201 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411).

In challenging whether the evidence was such that the Trempealeau County Environment & Land Use Committee might reasonably make the determination in question, courts apply the substantial evidence test. <u>See</u> Part III, <u>infra</u>.

addressed AllEnergy's arguments; the Committee addressed the provisions of the county's ordinance and its decision was the result of deliberation and judgment exercised within the range of discretion accorded it in the ordinance; and the Committee's determination was reasonable, had a rational basis, and was supported by substantial evidence.[9]

¶9 On certiorari, this court reviews the record of the Trempealeau County Environment & Land Use Committee, rather than the judgment or findings of the circuit court or the decision of the court of appeals.[10] We have undertaken an independent review of the Committee's record but have benefitted from the court of appeals' comprehensive review.

---

[9] A determination of a local governmental entity represents its will and not its judgment when its action is "arbitrary, oppressive, or unreasonable." Snyder v. Waukesha Cty. Zoning Bd. of Adj., 74 Wis. 2d 468, 475-76, 247 N.W.2d 98 (1976) (An action is "arbitrary o[r] capricious if it is unreasonable or without a rational basis."); see also Olson v. Rothwell, 28 Wis. 2d 233, 239, 137 N.W.2d 86 (1965) ("Arbitrary or capricious action on the part of an administrative agency occurs when it can be said that such action is unreasonable or does not have a rational basis. . . . and [is] not the result of the 'winnowing and sifting' process.") (internal citations omitted); State ex rel. Harris v. Annuity & Pension Bd., Emp. Ret. Sys. of City of Milwaukee, 87 Wis. 2d 646, 651–52, 275 N.W.2d 668, 671 (1979) (the fourth certiorari criterion, whether the evidence was such that the governmental entity might reasonably make the order based on evidence, controls the third criterion); see also Williams v. Housing Auth. of City of Milwaukee, 2010 WI App 14, ¶10, 323 Wis. 2d 179, 779 N.W.2d 185 (a challenge under criteria three and four of a certiorari review requires a court to determine whether the decision is founded on insufficient evidence).

[10] Oneida Seven Generations Corp., 362 Wis. 2d 290, ¶42.

¶10 For the reasons set forth, we conclude as follows:

I. The Trempealeau County Environment & Land Use Committee applied the factors and considerations set forth in the applicable ordinance and thus kept within its jurisdiction in denying a conditional use permit to AllEnergy.

II. There is substantial evidence in the record to support the Trempealeau County Environment & Land Use Committee's decision denying AllEnergy's application for a conditional use permit.

III. The court will not overturn settled law governing review of a grant or denial of a conditional use permit. The court does not adopt the new legal doctrine urged by AllEnergy, namely that an applicant for a conditional use permit is entitled to the permit for a conditional use when it meets the specific conditions set forth in the ordinance and any additional conditions set forth, and that an applicant cannot be required to meet other conditions and standards in the ordinance.

¶11 Part I describes the proposed project for which AllEnergy sought a conditional use permit. In Parts II, III, and IV, we address each issue stated above. Issues I and II require a fact-intensive analysis to determine whether the Trempealeau County Environment & Land Use Committee kept within its jurisdiction and whether substantial evidence exists to support the Committee's denial of AllEnergy's application for a

conditional use permit; the facts are set forth in Parts II and III.

I

¶12 Trempealeau County is home to several frac sand mines. Trempealeau County's rolling and bucolic hills hide vast reserves of silica sand. Silica sand is often called "frac sand," in reference to the material's use as a proppant in hydraulic fracturing, that is, in "fracking." Fracking is a process used to extract previously inaccessible buried reserves of oil and natural gas. The process involves drilling an oil or natural gas well and using explosives to create cracks or fissures in the rock or subsurface material. A mixture of water, chemicals, and frac sand is injected to expand and hold open the cracks or fissures created by the explosives. The oil or natural gas reserves leach out of the cracks and fissures and into the wells.[11]

¶13 In May 2013, AllEnergy located a site in the Town of Arcadia in Trempealeau County for a frac sand mine. The site is located in an Exclusive Agriculture 2 (EA-2) zoning district, which has the stated purpose to "preserve[] class I, II and III soils and additional irrigated farmland from scattered residential developments that would threaten the future of

---

[11] For a more in-depth discussion of fracking and frac sand, see Wisconsin Department of Natural Resources, Industrial Sand Mining in Wisconsin, June 2016, http://dnr.wi.gov/topic/EIA/documents/ISMSA/ISMSA.pdf (last visited May 22, 2017).

agriculture . . ." and "to preserve woodlands, wetlands, natural areas and the rural atmosphere of the County."[12]

¶14 Because non-metallic mineral mining, including frac sand mining, requires a conditional use permit in Trempealeau County, AllEnergy filed an application for such a permit and a non-metallic mineral mining reclamation plan with the County on August 2, 2013. The application describes a 550-acre project, which includes a 265-acre mine site, a processing plant, a conveyor system (to move sand and other materials around the facility), storm water retention ponds, and a rail spur connecting the facility to a Canadian Northern rail line.

¶15 AllEnergy's application also explains that it had received "favorable determinations" from various state and federal agencies regarding wetland-fill, storm water discharge, and highway-related permits.

¶16 Trempealeau County's Department of Land Management initially received the application and referred it to an engineering firm for third-party review. In response to the engineering firm's concerns, AllEnergy made changes to its plan.

---

[12] See Trempealeau County Zoning Ordinance § 2.03(2).

On August 27, 2013, the Department of Land Management deemed the plan "complete."[13]

¶17 Tasked with deciding whether a sand mine should be permitted in the EA-2 zoning district, the Trempealeau County Environment & Land Use Committee held a public hearing on AllEnergy's application on October 9, 2013. During the hearing, AllEnergy's representatives and its experts gave presentations on the project.

¶18 After AllEnergy's presentations, the hearing was opened to public testimony. Thirteen people testified against permitting the proposed non-metallic mine and two supported the mine. In addition, letters and e-mails were read into the record. According to the circuit court, "[a]pproximately 368 people went on record as being in favor of granting the conditional use permit, with the vast majority registering their support via form letter with little or no comment, including approximately 51 people who are residents of another state. Approximately 38 people went on record as being opposed to granting the conditional use permit, the majority of whom provided a reason for their position."

---

[13] The Department of Land Management deemed the application complete days before the County adopted a one-year moratorium on permitting new frac sand mines on August 30 (effective September 1, 2013). The County adopted the moratorium in order to study the health and environmental effects of the recent boom in frac sand mining. Because AllEnergy submitted a complete application before September 1, the moratorium did not apply to AllEnergy.

¶19 Generally, those favoring granting the conditional use permit cited increased employment. Those opposed cited environmental, health, and cultural concerns.

¶20 A lengthy discussion ensued between AllEnergy's representatives and the members of the Trempealeau County Environment & Land Use Committee regarding the concerns expressed by the public about the project.

¶21 During the public hearing, the Trempealeau County Environment & Land Use Committee reviewed the provisions of the County ordinance concerning conditional use permits, non-metallic mineral mining permits, and non-metallic mine reclamation. See Trempealeau County Zoning Ordinance chs. 10, 13, 20. The substance of these ordinance provisions will be discussed below. For now, it suffices to say that the Committee discussed many of the factors in the ordinance and that AllEnergy was involved in this discussion.

¶22 After reviewing the ordinance provisions governing its decision, the Trempealeau County Environment & Land Use Committee discussed what conditions would have to be imposed on AllEnergy's conditional use permit before it would vote to grant the permit. After extensive discussion, the Committee voted 7-1 in favor of imposing numerous conditions on the conditional use permit.

¶23 After deciding on the approved conditions, the Trempealeau County Environment & Land Use Committee voted 5-3 to deny AllEnergy's application for a conditional use permit even with those conditions in place. The five members of the

Committee who voted to deny the application stated their reasons for doing so on the record. The Committee also prepared a written summary of its decision pursuant to Trempealeau County Zoning Ordinance § 13.03(4).[14]

II

¶24 AllEnergy's first challenge is that the Trempealeau County Environment & Land Use Committee did not keep within its jurisdiction when denying a conditional use permit to AllEnergy when it based its denial on "legislative concerns implicating public health, safety, and welfare."

¶25 To support this challenge, AllEnergy makes three arguments.

¶26 AllEnergy argues that the Trempealeau County Board of Supervisors decided, as a legislative matter in enacting the ordinance, that the public health, safety, and welfare may be served by allowing non-metallic mineral mining in an Exclusive Agriculture 2 (EA-2) zoning district. AllEnergy reasons that the Trempealeau County Environment & Land Use Committee did not keep within its jurisdiction in denying AllEnergy a conditional use permit because the designation of a use in a zoning code as

---

[14] Under our cases, no requirement exists that a written decision be prepared, but, for meaningful review, a reviewing court must be able to discern from the record or the transcript of the proceedings before the board the reasons for the denial of the application for a conditional use permit. See Lamar Cent. Outdoor, 284 Wis. 2d 1, ¶¶31-35.

13

a conditional use by the Board of Supervisors conclusively establishes that the use is in the public interest.

¶27 AllEnergy also argues that because the Trempealeau County Board of Supervisors included non-metallic mineral mining as a conditional use within an EA-2 zoning district, such a use is presumptively valid and the proper inquiry for the Trempealeau County Environment & Land Use Committee is whether the conditional use at the particular location carries <u>impacts greater</u> than the adverse impacts ordinarily associated with that use.  AllEnergy asserts further that it is entitled to a conditional use permit as of right because no evidence in the record demonstrates that the proposed non-metallic mineral mining site at the particular location carries <u>impacts greater</u> than the adverse impacts ordinarily associated with that use.[15]

¶28 AllEnergy further bolsters its position that the Trempealeau County Environment & Land Use Committee did not keep within its jurisdiction by arguing that the guideline of "public health, safety or general welfare" is too general to supply the necessary guidance for action by the Committee.  In making this argument AllEnergy does not refer to the constitution in its briefs, but its argument is a constitutional one attacking the ordinance as an invalid delegation of power to the Committee.

---

[15] AllEnergy relies on Maryland cases adopting this standard.  <u>See, e.g.,</u> <u>Mossburg v. Montgomery Cty.</u>, 666 A.2d 1253 (Md. Ct. App. 1995).

14

¶29 At oral argument, Justice Ziegler asked whether AllEnergy was challenging the constitutionality of the ordinance. Counsel for AllEnergy replied that the court stopped him from making such an argument.

¶30 The dialogue at oral argument proceeded as follows:

Justice Ziegler: I'm curious, it doesn't seem that you have specifically made constitutional arguments that this is an unconstitutional delegation of authority or that this ordinance is unconstitutional either facially or as applied, or any other constitutional claims. I'm curious why not.

AllEnergy's counsel: Because this court told me I couldn't make them. That was one of the issues that we raised in our petition for review and the court granted review on the three issues that are stated in its order granting the petition. We did raise a constitutional issue, but it is not before this court.

¶31 Justice Ziegler and counsel, however, spoke past each other. AllEnergy's response to Justice Ziegler should have been that it did not raise an unconstitutional delegation of authority claim or make any facial or as-applied constitutional claim in its petition for review. See ¶3 n.3, supra (describing AllEnergy's statement of issues in its petition for review).

¶32 AllEnergy's petition for review did raise a constitutional issue that the court did not address in granting review. AllEnergy's petition for review raised a violation of due process and equal protection relating to judicial notice of certain documents. See ¶3 n.3, supra. This was not the constitutional argument to which Justice Ziegler was referring.

¶33 Undeniably, AllEnergy's brief attacks the constitutionality of the Trempealeau County ordinance, relying

15

throughout its brief (in pages too numerous to cite in its Table of Authorities) on State ex rel. Humble Oil & Refining Co. v. Wahner, 25 Wis. 2d 1, 130 N.W.2d 304 (1964), a case successfully challenging the constitutionality of an ordinance on the grounds of invalid standards in the ordinance.

¶34 Trempealeau County's brief correctly objects to AllEnergy's diverging into a constitutional argument in its discussion of whether the Trempealeau County Environment & Land Use Committee exceeded its jurisdiction.

¶35 We disagree with the positions that AllEnergy urges. We conclude:

    (A) By adhering to the Trempealeau County ordinance, the Trempealeau County Environment & Land Use Committee kept within its jurisdiction in denying AllEnergy's application for a conditional use permit in the instant case.

¶36 AllEnergy supports its challenge to the Committee's jurisdiction by three arguments. As to these three arguments, we conclude:

    (B) Designation of non-metallic mineral mining as a conditional use in the zoning code does not conclusively establish that the use is in the public interest.

    (C) The proper inquiry is not whether the proposed conditional use carries impacts greater than the adverse impacts ordinarily associated with that use, and

16

(D) The guidelines in the Trempealeau County ordinance, including the requirement that the Committee consider "public health, safety or general welfare," are constitutional.

A

¶37 To determine whether the Trempealeau County Environment & Land Use Committee kept within its jurisdiction, we compare the terms of the ordinance to the Committee's action. The "kept within its jurisdiction" inquiry on certiorari review considers whether the applicable ordinance grants the Trempealeau County Environment & Land Use Committee the authority to take the action it took. The Trempealeau County Environment & Land Use Committee, as an agency created by the County's legislative body, has those powers that are expressly conferred or that are necessarily implied by the ordinances under which it operates.[16]

¶38 The Trempealeau County Zoning Ordinance enacted by the Trempealeau County Board of Supervisors lists various criteria the Trempealeau County Environment & Land Use Committee is to

---

[16] Kimberly-Clark Corp. v. Pub. Serv. Comm'n of Wis., 110 Wis. 2d 455, 461-62, 329 N.W.2d 143 (1983) (citing Elroy-Kendall-Wilton Schs. v. Coop. Educ. Serv., 102 Wis. 2d 274, 278, 306 N.W.2d 89 (Ct. App. 1981)). See also Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶14, 270 Wis. 2d 318, 334-35, 677 N.W.2d 612 ("It is axiomatic that because the legislature creates administrative agencies as part of the executive branch, such agencies have only those powers which are expressly conferred or which are necessarily implied by the statutes under which it operates.") (internal quotation marks omitted).

17

consider in deciding whether to grant or deny an application for a conditional use permit.

¶39 The ordinance requires the Trempealeau County Environment & Land Use Committee to "review each conditional use permit application for compliance with all requirements applicable to that specific use and to all other relevant provisions of this Ordinance." The ordinance specifically directs the Committee to approve a conditional use permit only if it determines that "the proposed use at the proposed location will not be contrary to the public interest and will not be detrimental or injurious to the public health, public safety, or character of the surrounding area." Trempealeau County Zoning Ordinance § 10.04(5)(a).

¶40 The Trempealeau County Zoning Ordinance provides 16 other factors to guide the Trempealeau County Environment & Land Use Committee's inquiry in its decision-making function regarding a conditional use permit, including:

1. Whether the proposed project will adversely affect property in the area.

2. Whether the proposed use is similar to other uses in the area.

3. Whether the proposed project is consistent with adopted Trempealeau County plans or any officially adopted town plan.

. . . .

7. Whether the proposed use creates noise, odor, or dust.

. . . .

18

11. Provision for proper surface water drainage.

. . . .

13. Whether the proposed project creates excessive exterior lighting glare or spillover onto neighboring properties.

14. Whether the proposed project leads to a change in the natural character of the area through the removal of natural vegetation or altering of the topography.

15. Whether the proposed project would adversely affect the natural beauty of the area.

16. Whether the proposed project would adversely affect any historic or archeological sites.

Trempealeau County Zoning Ordinance § 10.04(5)(b).

¶41 Moreover, the Trempealeau County Environment & Land Use Committee is not limited to considering the factors specified in the ordinance. It may consider "additional factors as are deemed by it to be relevant to its decision making process . . . ." Trempealeau County Zoning Ordinance § 10.04(5)(b). The Committee did not rely on this latter provision.

¶42 In addition to the criteria governing the granting of conditional use permits stated above, additional considerations for authorizing non-metallic mineral mining are set forth in chapter 13 of the Trempealeau County Zoning Ordinance. The Trempealeau County Environment & Land Use Committee is required to analyze proposals for non-metallic mineral mining "in light of the County's interest in providing for the wise use of the natural resources of the county, aesthetic implications of the siting of such a mine at a given location and the impacts of

19

such a mining operation on the general health, safety and welfare of the public." Trempealeau County Zoning Ordinance § 13.01.

¶43 The zoning ordinance governing non-metallic mineral mining sets forth another eight factors the Trempealeau County Environment & Land Use Committee shall consider, "among other factors," when considering an application for a non-metallic mineral mine permit:

> (a) When considering an application for a non-metallic mineral mine permit, the County shall consider, among other factors, the following: the effect or impact of the proposed operation upon; (1) public infrastructure, including but not limited to streets and highways, schools and other public facilities; (2) present and proposed uses of land in the vicinity of the proposed operation; (3) surface water drainage, water quality and supply; (4) soil erosion; (5) aesthetics, including but not limited to scenic beauty and the conservation of natural resources of outstanding quality or uniqueness; (6) the market value of lands in the vicinity of the proposed operation; (7) the physical practicality of reclamation of the site after the operation has been concluded; and (8) the public interest from the standpoints of smoke, dust, noxious or toxic gases and odors, noise, vibration, blasting and the operation of heavy machinery and equipment.

Trempealeau County Zoning Ordinance § 13.03(3)(a).

¶44 The ordinance also requires the Committee to determine whether the proposed non-metallic mining operation is an appropriate land use at the site in question, including the ability of the operator to avoid harm to the legitimate interests of properties in the vicinity of the proposed operation, as follows:

20

(b) In order to grant a conditional use permit for non-metallic mineral mining, the County shall find that the proposed operation is an appropriate land use at the site in question, based upon consideration of such factors as: existence of non-metallic mineral deposits; proximity of site to transportation facilities and to markets; and the ability of the operator to avoid harm to the public health, safety and welfare and to the legitimate interests of properties in the vicinity of the proposed operation.

Trempealeau County Zoning Ordinance § 13.03(3)(b).

¶45 The ordinance acknowledges, however, despite the extensive criteria outlined above, that it is "impossible to prescribe the criteria upon which such a permit may be granted in each and every case." Trempealeau County Zoning Ordinance § 13.01.

¶46 In determining whether to grant AllEnergy a conditional use permit, the Trempealeau County Environment & Land Use Committee considered and applied the criteria set forth in the ordinance.

¶47 Each member of the Trempealeau County Environment & Land Use Committee who voted against granting AllEnergy's application stated his or her reasons as follows:

**Committee member Vold:** The reason I thought it was an attempt to [negate] the moratorium was that——I wasn't here for the moratorium but I read it. I thought that the booklet was quite incomplete, there was too many unanswered questions in the application process and I felt there was more questions than there were answers.

**Committee member Zeglin:** I too agree that the plan seemed to be rushed; it was revised after the third party review. Things should have completed before that and it leads one to wonder how many times it may be revised again. The lack of a reclamation plan provided in the initial plan. That should have been

21

done initially. I have numerous environmental concerns about the significant wetlands in the area, the river at this point historically was and is constantly changing it is very hard to plan anything on a long range basis. I'm very concerned with the water table in the area——it is very high. I haven't been convinced that it will not be disturbed. Virg you can add the river constantly floods, changes course.

**Committee member Brandt:** My reasons were wetland location is too close to sensitive water and wildlife resources and the inability of the applicant to mitigate those concerns to my satisfaction. Um, the possibility of possible significant danger to ground water, by processes involved in mining and processing, and the high capacity well. Number 3 is the significant change to the landscape and to the local cultural . . . and social conditions. Um, and the other issues that had been brought up by staff and the public included the reclamation plan.

**Committee member Patzner:** Well, I represent the Farm Service Agency and I'm for agriculture. Agriculture has a history of bringing stability and jobs to our local economy, where sand mines have a history of boom or bust on the local economy, therefore destroying good productive agricultural land is not a wise decision. We don't want to destroy our outdoor recreation potential, like hunting, biking and other activities that attract visitors, retirees and people that love scenic beauty who are close to work and live here. There are health concerns with mining so we need to protect our residents.

**Committee member Bawek:** Based on information given as referenced and my own findings, along with public concerns given at this meeting, this siting does not seem to be in the best interest of our citizens nor in the best use of our natural resources of Trempealeau County. Soil around and in the site bring into question the potential for water problems. Trout Run Creek and the close proximity to the Trempealeau River deem this site as poor. The potential loss of some unique resources for both ourselves and future generations comes into question. That's it.

¶48 It is evident that the Trempealeau County Environment & Land Use Committee exercised the powers conferred by the ordinance. It considered factors set forth in the ordinance for granting a conditional use permit. These factors included the impact of AllEnergy's mine on the general health, safety, and welfare of the public; the wise use of the county's material resources; the aesthetic implications of the siting of the mine; and the adverse effects of the mine on the environment (including water quality, ground water, and wetlands), scenic beauty, wildlife, and recreational opportunities. After considering these factors, the Committee determined that AllEnergy's application for a conditional use permit should be denied.

¶49 Because the Trempealeau County Environment & Land Use Committee considered the factors the Trempealeau County Board of Supervisors directed the Committee to consider, we conclude that the Committee kept within its jurisdiction.

B

¶50 Our case law has not accepted what AllEnergy advocates as a new doctrine in Wisconsin, namely that a legislative listing of a conditional use equates to a legislative determination that the use is in the public interest. AllEnergy urges the court to apply this doctrine and hold that the Trempealeau County Environment & Land Use Committee did not keep within its jurisdiction when it denied a conditional use permit for non-metallic mineral mining, a conditional use listed in the ordinance.

23

¶51 In Edward Kraemer & Sons, Inc. v. Sauk County Board of Adjustment, 183 Wis. 2d 1, 7, 16-17, 515 N.W.2d 256 (1994), the court declared that the court of appeals erred in believing "that the mineral extraction permit had to be granted and if conditions were necessary to ensure compliance with the ordinance, the Board was obligated to fashion them."

¶52 Indeed, the Kraemer court concluded that conditional uses may be authorized pursuant to the ordinance, but they are not uses as of right. They are allowed only if approved by the appropriate local governmental authority.[17]

¶53 In Delta Biological Resources, Inc. v. Board of Zoning Appeals of the City of Milwaukee, 160 Wis. 2d 905, 912, 467 N.W.2d 164 (Wis. App. 1991), the court of appeals emphasized: "[T]he presumption that the conditional use serves the public interest[ ] does not exist in Wisconsin. . . . The zoning ordinance allows certain uses, provided certain conditions are met. These conditions are not presumed to be met either by judicial fiat or by the terms of the ordinance . . . ."[18]

---

[17] See also Town of Rhine v. Bizzell, 2008 WI 76, ¶¶55-57, 311 Wis. 2d 1, 751 N.W.2d 780 (quoting Primeco Pers. Commc'ns, L.P. v. City of Mequon, 242 F. Supp. 2d 567, 576 (E.D. Wis. 2003)).

[18] Delta Biological's argument, which the court of appeals dismissed, was that "a presumption arises that [a conditional] use serves the public interest from the fact that the legislature permits it, and the special use itself, therefore, presumes a legislative determination that a public need for the use exists." Delta Biological Res., Inc. v. Bd. of Zoning Appeals of the City of Milwaukee, 160 Wis. 2d 905, 911-12, 467 N.W.2d 164 (Wis. App. 1991).

¶54 In Wisconsin, and in many states, a conditional use is one that has been legislatively determined to be compatible in a particular area, not a use that is always compatible at a specific site within that area.  In these states, the decision whether to grant a conditional use permit is discretionary.  The relevant entity determines whether a particular site will accommodate a proposed particular use.  In other states, decision makers have less discretion on requests for a conditional use permit.[19]

¶55 Thus, our precedent dictates that no presumption exists that a conditional use is ipso facto consistent with the public interest or that a conditional use is a use as of right at a particular site within an area zoned to permit that conditional use.[20]  No compelling reason has been given to justify deviating from Wisconsin precedent and eliminating site-specific flexibility in local zoning matters.

C

---

[19] See Daniel R. Mandelker & Allan Wolk, Land Use Law § 6.53 (6th ed. 2016); 2 Patricia E. Salkin, American Law of Zoning §§ 14:1, 14:6 (6th ed. 2016); Rathkopf's The Law of Zoning and Planning §§ 60:5, 60:9, 60:10, 61:5-:8, 61:34-:38 (2016).

[20] "The principle of stare decisis applies to published decisions of the court of appeals, and stare decisis requires us to follow court of appeals precedent unless a compelling reason exists to overrule it." Wenke v. Gehl Co., 2004 WI 103, ¶21, 274 Wis. 2d 220, 682 N.W.2d 405 (citations omitted). See also State v. Ziegler, 2012 WI 73, ¶114, 342 Wis. 2d 256, 816 N.W.2d 238; Wis. Stat. § 752.41(2) ("Officially published opinions of the court of appeals shall have statewide precedential effect.").

¶56 No Wisconsin case has concluded that the proper inquiry for a local government entity in considering an application for a conditional use permit is whether the conditional use carries adverse impacts greater than the adverse impacts ordinarily associated with that use. This approach does not comport with precedent, and no compelling reason has been given to justify deviating from precedent.

D

¶57 AllEnergy bolsters its argument that the Trempealeau County Environment & Land Use Committee did not keep within its jurisdiction in denying AllEnergy's application for a conditional use permit with the contention that the provisions of the Trempealeau County ordinance impermissibly require the Committee to look at "legislative considerations of public health, safety and welfare." According to AllEnergy, the Committee can consider only objective factors, not public interest factors.

¶58 It appears that AllEnergy is trying to shoehorn a constitutional challenge into the "exceeds jurisdiction" aspect of certiorari review without explicitly saying so. See ¶¶29-33, supra.

¶59 We understand AllEnergy to be challenging the Trempealeau County Ordinance on the ground that its standards are unconstitutionally vague and do not guide the Trempealeau County Environment & Land Use Committee's decision-making

26

process.[21] We are not persuaded by AllEnergy's implied constitutional argument.

¶60 To begin, we emphasize our role in determining the constitutionality of an ordinance. An ordinance is presumed valid. It must be liberally construed in favor of the decision rendered by the local governmental entity.[22] A party challenging the constitutionality of an ordinance bears a heavy burden to show that the ordinance is unconstitutional beyond a reasonable doubt:

> The role of courts in zoning matters is limited because zoning is a legislative function. An ordinance is presumed valid and must be liberally construed in favor of the municipality. The party challenging the constitutionality of an ordinance bears a heavy burden. In Wisconsin, "an ordinance will be held constitutional unless the contrary is shown beyond a reasonable doubt, and the ordinance is entitled to every presumption in favor of its validity."

Town of Rhine v. Bizzell, 2008 WI 76, ¶26, 311 Wis. 2d 1, 751 N.W.2d 78 (citations omitted).

¶61 Edward Kraemer & Sons, Inc. v. Sauk County Board of Adjustment, 183 Wis. 2d 1, 515 N.W.2d 256 (1994), illustrates an ordinance permissibly requiring a zoning entity to consider public interest factors in issuing a conditional use permit.

---

[21] "When an ordinance vests discretionary power in administrative officials it must prescribe standards to guide their action." State ex rel. Humble Oil & Refining Co. v. Wahner, 25 Wis. 2d 1, 7, 130 N.W.2d 304 (1964).

[22] Bizzell, 311 Wis. 2d 1, ¶26 (citing State ex rel. Am. Oil Co. v. Bessent, 27 Wis. 2d 537, 546, 135 N.W.2d 317 (1965)).

¶62 In Kraemer, the Sauk County Board of Adjustment denied an application for a conditional use permit to extract minerals because of concern that the project would harm the Baraboo Bluffs, "an important natural resource." Kraemer, 183 Wis. 2d at 11. The court explained that, under the ordinance governing the granting of a special exception permit for mineral extraction,[23] the Board must consider "the ability of the operation . . . to avoid harm to the public health, safety and welfare and to the legitimate interests of nearby properties." Kraemer, 183 Wis. 2d at 6.

¶63 The petitioner, Edward Kraemer & Sons, argued that the standards in the ordinance are not sufficiently specific to withstand attack on the grounds that they constitute an unconstitutional delegation of legislative authority. Kraemer, 183 Wis. 2d at 13.

¶64 The Kraemer court upheld the constitutionality of the Sauk County ordinance's standard of public health, safety, and welfare as permissible criteria for the Board to consider in determining whether to grant a conditional use permit, stating:

> [T]he "public health, safety and welfare" standard[ ]
> is a general standard that provides the Board with
> flexibility and discretion to consider how a proposed
> special exception could affect the public welfare.
> The standard allows the Board to consider potential
> harm to individuals living near the proposed mineral

---

[23] The phrase "special exception permit" has been used interchangeably with "conditional use permit." State ex rel. Skelly Oil Co. v. City of Delafield, 58 Wis. 2d 695, 700, 207 N.W.2d 585 (1973).

28

extraction site, including exposure to health hazards from the dust and threats to safety posed by blasting. The public health, safety and welfare standard is also broad enough to enable the Board to consider the generalized effects on the public welfare that concerned the Board in this case——harm to the public that would result from partial destruction of a natural area that both permit supporters and opponents agree is of great geological importance.

Kraemer, 183 Wis. 2d at 11.

¶65 The Kraemer court, 183 Wis. 2d 1, 14, citing 3 Edward H. Ziegler, Rathkopf's The Law of Zoning and Planning § 41.11 at 41-49 (4th ed. 1993), further declared that these "generalized standards are acceptable in most jurisdictions." The mere fact that the "standards are general in nature does not impair the validity of these portions of the ordinance." Kraemer, 183 Wis. 2d 1, 14-15. According to the Kraemer court, 183 Wis. 2d 1, 14 (quoting Rathkopf's § 41.11 at 41-49), the ordinance's general standards served a beneficial purpose:

The purpose of the special exception-conditional use technique is to confer a degree of flexibility in the land use regulations. This would be lost if overly detailed standards covering each specific situation in which the use is to be granted or, conversely, each situation in which it is to be denied, were required to be placed in the ordinance.

¶66 The Kraemer court ultimately ruled that the standards in the Sauk County ordinance were specific enough to guide the action of the Board. Kraemer, 183 Wis. 2d at 11-12.[24]

¶67 AllEnergy calls on the court to overrule Kraemer and to be guided instead by State ex rel. Humble Oil & Refining Co. v. Wahner, 25 Wis. 2d 1, 130 N.W.2d 304 (1964). The reference to Humble Oil is unavailing.

¶68 In Humble Oil, a town's zoning ordinance classified gas stations as conditional uses. Gas stations were permitted as a conditional use in a commercial zone only if approved by the zoning board of appeals. The only "guideline" in the ordinance provided that "in interpreting and applying the provisions of this ordinance they shall be held to be the minimum requirements for the promotion of the public health, safety, convenience, prosperity or general welfare . . . ." Humble Oil, 25 Wis. 2d at 7.

¶69 The Humble Oil court concluded that this "guideline" does not prescribe adequate standards to govern the board in its disposition of a request to build a filling station. The court characterized the "guideline" as a listing of factors that

---

[24]Criteria to be considered such as the following appear in the statutes governing the granting of applications for various permits: ""enjoyment of natural scenic beauty and environmental quality," "will not endanger life, health or property," "reasonable needs of the public," "public interest," "not have undue adverse impact on other environmental values such as, but not limited to, ecological balance, public health and welfare, . . . the aesthetics of land and water and recreational use" See, e.g., Wis. Stat. §§ 31.06(3), 31.08, 196.491(3)(d).

justify the zoning ordinance; the factors are too general and too remotely related to what the board is required to do to supply the necessary guidelines for the board or Humble Oil. The court stated that the ordinance did not "inform Humble and any other parties hoping to build filling stations of what was required of them and what factors were to be considered by the board in disposing of each application . . . and this was bound to create a situation in which the board could do just as it pleased." Humble Oil, 25 Wis. 2d at 11.

¶70 The court was careful in Humble Oil, however, to preserve the board's exercise of discretion and judgment in issuing conditional use permits. The Humble Oil court reviewed several cases that addressed the validity of the standards set forth in zoning ordinances. Humble Oil, 25 Wis. 2d at 8-9. For instance, in discussing prior cases ruling on whether an ordinance was too broad, the court referred approvingly to ordinances that "contained guidelines that pinpointed some of the considerations that were to govern the exercise of discretionary power either by the common council or the zoning board." Humble Oil, 25 Wis. 2d at 9. In contrast, the ordinance in the Humble Oil case did not pinpoint any such considerations.

¶71 Applying Kraemer and Humble Oil, we conclude that the Trempealeau County ordinance at issue in the instant case is more similar to the Kraemer ordinance and to the ordinance the court upheld in Smith v. City of Brookfield, 272 Wis. 1, 7-10,

31

74 N.W.2d 770 (1956),[25] than to the ordinance the court declared unconstitutionally vague in Humble Oil.

¶72 After comparing Humble Oil and Smith, the court of appeals in Guse v. City of New Berlin, 2012 WI App 24, ¶¶10-12, 339 Wis. 2d 399, 810 N.W.2d 838, concluded that "ordinances may vest boards with some (and even significant) discretion without being unconstitutionally vague." Like the ordinances in Kraemer, Smith, and Guse, Trempealeau County's zoning ordinance does not "blanket the [Committee] with unfettered discretion." Guse, 339 Wis. 2d 399, ¶11.[26]

¶73 In sum, the Trempealeau County Environment & Land Use Committee kept within its jurisdiction. It exercised its discretion in deciding whether to grant AllEnergy's application

---

[25] In Smith v. City of Brookfield, 272 Wis. 1, 7-10, 74 N.W.2d 770 (1956), the court held that a general statement of purpose contained in the preamble to the town's comprehensive zoning ordinance provided sufficient guidance. The stated purpose was "to provide adequate light, pure air, and safety from fire and other dangers, to conserve the taxable value of land and buildings throughout the township, to avoid congestion in the public streets and highways and to promote the public health, safety, comfort, morals, and welfare, all in accordance with a comprehensive zoning plan . . . ." (Emphasis in original.)

[26] See also Town of Grand Chute v. U.S. Paper Converters, Inc., 229 Wis. 2d 674, 686, 600 N.W.2d 33 (Ct. App. 1999) (concluding that "a town, regulating development within its boundaries, must create an ordinance [with enough specificity] to give developers reasonable notice of the areas of inquiry that the town will examine in approving or disapproving proposed sites.").

for a conditional use permit, adhering to the criteria set forth in the ordinance.

                                III

¶74 We turn now to the second issue AllEnergy presents: Whether the Trempealeau County Environment & Land Use Committee "might reasonably make the order or determination in question based on evidence." This issue raises the question of the sufficiency of the evidence supporting the Committee's decision. The sufficiency of the evidence is determined under the substantial evidence test.[27]

¶75 Substantial evidence is evidence of such convincing power that reasonable persons could reach the same decision as the local governmental entity,[28] even if there is also substantial evidence to support the opposite decision.[29]

---

[27] Gehin v. Wis. Group Ins. Bd., 2005 WI 16, ¶6 nn.5-6, 278 Wis. 2d 111, 692 N.W.2d 572 (citing State ex rel. Harris & Annuity Pension Bd., 87 Wis. 2d 646, 652, 275 N.W.2d 668 (1979)).

[28] Oneida Seven Generations Corp., 362 Wis. 2d 290, ¶43.

See also Gehin, 278 Wis. 2d 111, ¶48 ("Substantial evidence has been defined in the case law as 'that quantity and quality of evidence which a reasonable [person] could accept as adequate to support a conclusion.") (footnotes and citations omitted).

[29] Sills v. Walworth Cty. Land Mgt., 2002 WI App 111, ¶¶10-11, 254 Wis. 2d 538, 648 N.W.2d 878 ("We must uphold the Committee's decision so long as it is supported by substantial evidence, even if there is also substantial evidence to support the opposite conclusion.").

Reasonable inferences may be drawn from credible evidence.[30] If "credible, relevant and probative evidence upon which reasonable persons could rely to reach a decision" supports the decision of the Trempealeau County Environment & Land Use Committee, the court will uphold the decision.[31]

¶76 Quantitatively, substantial evidence is less than a preponderance of the evidence, Smith v. City of Milwaukee, 2014 WI App 95, ¶22, 356 Wis. 2d 779, 854 N.W.2d 857, but "more than 'a mere scintilla' of evidence and more than 'conjecture and speculation.'" Gehin v. Wis. Group Ins. Bd., 2005 WI 16, ¶48, 278 Wis. 2d 111, 692 N.W.2d 572 (quoted sources omitted).

¶77 AllEnergy contends that there is no substantial evidence in the record upon which the Trempealeau County Environment & Land Use Committee could deny AllEnergy's application because the Committee could not rely on the "uncorroborated hearsay" in the record or the lay opinions by persons lacking appropriate special expertise.

¶78 AllEnergy errs in trying to apply the Wisconsin Rules of Evidence to the instant case. The Wisconsin Rules of Evidence govern court proceedings, not administrative proceedings. Wisconsin Stat. § 901.01 states that Chapters 901.01 to 901.11, the Wisconsin Rules of Evidence, "govern

---

[30] Delta Biological Res., Inc. v. Bd. of Zoning Appeals of City of Milwaukee, 160 Wis. 2d 905, 910-915, 467 N.W.2d 164 (Ct. App. 1991).

[31] See Sills, 254 Wis. 2d 538, ¶11.

proceedings in the courts of the state of Wisconsin . . . ." The Wisconsin Rules of Evidence, by their very terms, do not govern the proceedings of the Trempealeau County Environment & Land Use Committee, administrative proceedings.

¶79 More recently, this court stated: "[A]n agency or hearing examiner is not ordinarily bound by common law or statutory rules of evidence." Gehin, 278 Wis. 2d 111, ¶¶6, 49-50.[32]

¶80 AllEnergy cites Folding Furniture Works v. Wisconsin Labor Relations Board, 232 Wis. 170, 285 N.W. 851 (1939), as support for its restrictive view of what constitutes substantial evidence. But Folding Furniture does not support AllEnergy.

¶81 In Folding Furniture, 232 Wis. at 188, the court stated that an administrative decision cannot be based on

---

[32] On certiorari review, the substantial evidence test is the same substantial evidence test used for the review of administrative determinations under Wis. Stat. ch. 227. Gehin, 278 Wis. 2d 111, ¶6.

The statute governing the admission of evidence before administrative agencies in contested cases, Wis. Stat. § 227.45(1), states that an agency is not bound by common law or statutory rules of evidence and adopts a "reasonable probative value test" for admission of testimony:

> [A]n agency or hearing examiner shall not be bound by common law or statutory rules of evidence. The agency or hearing examiner shall admit all testimony having reasonable probative value, but shall exclude immaterial, irrelevant or unduly repetitious testimony . . . . Basic principles of relevancy, materiality and probative force shall govern the proof of all questions of fact.

uncorroborated hearsay <u>alone</u>; uncorroborated hearsay alone does not constitute substantial evidence. But <u>Folding Furniture</u> made clear that an administrative decision is based on substantial evidence if it is based on evidence having rational probative force.

¶82 <u>Folding Furniture</u>, 232 Wis. at 189, quotes with favor <u>Consolidated Edison Co. of New York v. National Labor Relations Board</u>, 305 U.S. 197, 229-30 (1938), in which the United States Supreme Court stated: Mere uncorroborated evidence does not constitute substantial evidence. Substantial evidence means evidence having rational probative force, that is, relevant evidence accepted by a reasonable mind as adequate to support a conclusion. The <u>Consolidated Edison</u> Court stated as follows:

> The obvious purpose of this and similar provisions [freeing an administrative agency of rules of evidence] is to free administrative boards from the compulsion of technical rules so that the mere admission of matter which would be deemed incompetent in judicial proceedings would not invalidate the administrative order. . . . But this assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having <u>rational probative force</u>. Mere uncorroborated hearsay or rumor does not constitute substantial evidence.
>
> . . . .
>
> Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. (Emphasis added and citations omitted).

¶83 As this court discussed in <u>Gehin</u>, a subsequent United States Supreme Court case, <u>Richardson v. Perales</u>, 402 U.S. 389,

36

407-08 (1971), explained the Consolidated Edison language that "mere uncorroborated hearsay" is not substantial evidence by emphasizing the language "rational probative effect" and explaining that hearsay can have such an effect:

> Although the [medical] reports are hearsay in the technical sense, because their content is not produced live before the hearing examiner, we feel that the claimant and the Court of Appeals read too much into the single sentence from Consolidated Edison. The contrast the Chief Justice was drawing, at the very page cited, was not with material that would be deemed formally inadmissible in judicial proceedings but with material 'without a basis in evidence having rational probative force.' This was not a blanket rejection by the Court of administrative reliance on hearsay irrespective of reliability and probative value. The opposite was the case.

¶84 In Gehin v. Wisconsin Group Insurance Board, 2005 WI 16, ¶54, 278 Wis. 2d 111, 692 N.W.2d 572, the court reinforced Folding Furniture (and Consolidated Edison), stating that Folding Furniture allows flexibility in the admission of hearsay evidence but that "this flexibility does not go so far as to justify administrative findings that are not based on evidence having a rational probative force."

¶85 Folding Furniture (adopting the Consolidated Edison language) has been followed in Wisconsin since 1939. Gehin, 278 Wis. 2d 111, ¶56. We adhere to Folding Furniture in the instant case.

¶86 In any event, the Trempealeau County Environment & Land Use Committee did not base its denial of AllEnergy's application for a conditional use permit solely on uncorroborated hearsay. Indeed, as we illustrate below, the

record is replete with specific and substantial representations of people describing their first-hand experiences with frac sand mines and their opinions.

¶87 The Committee and the courts would be remiss to ignore the words of concerned persons familiar with frac sand mining and the environs. Zoning is a matter of local concern, and many of the people commenting at the hearing on AllEnergy's proposal have either lived near a frac sand mine or will be living, working, and recreating alongside the proposed mine. The language of the Trempealeau County Zoning Ordinance clearly anticipates and invites public opinion. Thus, public expressions of support or opposition establish a valid basis——that is, substantial evidence——for a decision on AllEnergy's application for a conditional use permit.[33]

¶88 The substantial evidence test is a significant hurdle for AllEnergy to overcome because, in applying the test, this

---

[33] Substantial evidence, defined similarly to the Wisconsin definition, is used in case law of other jurisdictions. See, e.g., Ocean View Estates Homeowners Ass'n v. Montecito Water Dist., 116 Cal. App. 4th 396, 402 (2004) (opinions and observations about aesthetics can constitute substantial evidence); State of Missouri ex rel. Karch v. Camden Co., 302 S.W.2d 754 (Mo. Ct. App. 2010) (lay witnesses' testimony that increased boat traffic endangered public health or safety and would destroy nature of area constituted substantial evidence); City of Las Vegas v. Laughlin, 893 P.2d 383, 385 (Nev. 1995) (public concerns over increased traffic where children walk to school and preserving residential nature of neighborhood constituted substantial evidence); Bellsouth Mobility v. Miami-Dade Cty., 153 F. Supp. 2d 1345, 1354 (S.D. Fla. 2001) (decision on proposed cellular facility based on residents' aesthetic concerns was based on substantial evidence).

court is deferential to the decision of the Trempealeau County Environment & Land Use Committee.[34] Certiorari review accords the decision of the local governmental entity a presumption of "correctness and validity."[35]

¶89 Finally, in applying the substantial evidence test on certiorari review, a court does not reweigh the evidence. Roberts v. Manitowoc Cty. Bd. of Adjustment, 2006 WI App 169, ¶32, 295 Wis. 2d 522, 721 N.W.2d 499. Rather, we consider only whether the Trempealeau County Environment & Land Use Committee made a reasonable decision based on the evidence before it.[36] In making this determination, we may look to the whole record. "[A] reviewing court should consider the context of the evidence when determining whether it supports a municipality's action." Oneida Seven Generations Corp. v. City of Green Bay, 2015 WI 50, ¶45, 362 Wis. 2d 290, 865 N.W.2d 162.

---

[34] See Clark v. Waupaca Cty. Bd. of Adjustment, 186 Wis. 2d 300, 305, 519 N.W.2d 782 (1993) (citing Van Ermen v. DHSS, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978) ("As the substantial evidence test is highly deferential to the board's findings, we may not substitute our view of the evidence for that of the board when reviewing the sufficiency of the evidence on certiorari.")).

[35] Kapischke v. Cty. of Walworth, 226 Wis. 2d 320, 328, 595 N.W.2d 42 (Ct. App. 1999).

[36] Roberts v. Manitowoc Cty. Bd. of Adjustment, 2006 WI App 169, ¶28, 295 Wis. 2d 522, 721 N.W.2d 499 ("[I]t is not 'substantial concerns' that will overcome the Board's decision, but rather the absence of substantial supporting evidence.").

¶90 The context in which we consider the evidence in the instant case is the location and nature of the proposed non-metallic mineral mine, the applicable provisions of the Trempealeau County ordinance, and the record of the hearing before the Trempealeau County Environment & Land Use Committee.

¶91 The proposed mine area was to be located in an Exclusive Agriculture (EA-2) district. Non-metallic mineral mining, including industrial frac sand mining, is a conditional use in EA-2 districts. Trempealeau County Zoning Ordinance § 13.01. "Conditional uses are for those particular uses that a community recognizes as desirable or necessary but which the community will sanction only in a controlled manner." Town of Rhine v. Bizzell, 2008 WI 76, ¶20, 311 Wis. 2d 1, 751 N.W.2d 780. The Trempealeau County Board of Supervisors concluded that non-metallic mineral mines may be desirable in EA-2 districts, but only if the applicant for a conditional use permit demonstrates that it will meet the standards contained in the County's ordinance. See ¶¶39-45, supra.

¶92 Under the provision in the ordinance governing conditional uses, the Trempealeau County Environment & Land Use Committee has to determine that AllEnergy's proposed mine "will not be contrary to the public interest and will not be detrimental to or injurious to the public health, public safety, or character of the surrounding area." Trempealeau County Zoning Ordinance § 10.04(5)(a). The Trempealeau County Board of Supervisors set forth several factors to guide the Committee's inquiry into the public health, public safety, and character of

the surrounding area. Trempealeau County Zoning Ordinance § 10.06(6). See ¶39, supra.

¶93 Because AllEnergy applied for a conditional use permit to open and operate a non-metallic mineral mine, it also had to satisfy the standards the Trempealeau County Board of Supervisors established for non-metallic mineral mining, including the wise use of natural resources, aesthetics, the market value of land, and the legitimate interests of properties in the vicinity. See Trempealeau County Zoning Ordinance Chapter 13 (Non-metallic Mining); ¶¶43-45, supra.

¶94 Having set forth the substantial evidence test and the provisions of the county ordinance governing the standards and factors that the Trempealeau County Environment & Land Use Committee must consider, we examine the record to determine whether substantial evidence exists in the record to support the Committee's denial of AllEnergy's application for a conditional use permit.

¶95 AllEnergy has the burden of proof (persuasion) to demonstrate satisfaction of the criteria for a conditional use permit. Trempealeau County Zoning Ordinance § 10.04(5)(c). The Trempealeau County Environment & Land Use Committee is directed to deny an application for a conditional use permit if the application does not meet any of the conditional use or non-metallic mineral mining standards. Trempealeau County Zoning

Ordinance § 10.04(5)(c).[37]  If substantial evidence supports any of the Committee's reasons for denying AllEnergy's application pursuant to the criteria in the ordinance, the court will affirm the Committee's decision.[38]  We conclude that substantial evidence supports the reasons expressed by the members of the Committee for denying AllEnergy's application for a conditional use permit.

¶96 The court of appeals aptly synthesized the Trempealeau County Environment & Land Use Committee's reasons for denying AllEnergy's application for a conditional use permit.  The Committee denied AllEnergy's application for four primary reasons:

> (1) AllEnergy's plan was "rushed," "incomplete," and had been modified between the time of the plan's preliminary review and presentation at the public hearing;
>
> (2) The proposed mine raises environmental concerns;
>
> (3) The proposed mine would change the landscape and would have adverse effects on wildlife and recreational opportunities available to residents and tourists; and

---

[37] "At all times the burden of proof to demonstrate satisfaction of these criteria remains with the applicant." See also Delta Biological, 160 Wis. 2d at 910-12 ("The burden of proof at all times remains with the applicant.").

[38] Clark v. Waupaca Cty. Bd. of Adjustment, 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994) ("[I]f we conclude that any one of the board's reasons for denying the variances at issue passes certiorari review, we affirm without commenting on the board's other reasons."); see also Trempealeau County Zoning Ordinance § 10.04(5) (the Committee may deny the application if it does not satisfy any of the ordinance's criteria).

42

(4) The proposed mine raised health concerns and would result in changes in local culture and conditions.

¶97 The court of appeals reviewed whether substantial evidence supports the first reason for denying the permit. We do not. We look to the other primary reasons, summarized above, beginning with whether substantial evidence supports denying the application on the ground that the project raised environmental concerns, including the condition of Trout Run Creek, water quality, flooding, and wetlands.

¶98 Marlys Kolstad opined that the proposed mine on the banks of Trout Run Creek would endanger this Class II trout stream and tributary of the Trempealeau River. She explained that a 2014 report[39] noted that the stream was on the verge of no longer being able to sustain healthy populations of trout. The Creek's impairment was caused by "run-off from uplands and barnyards, [which] continue[s] to degrade habitat conditions," and with the "external draining associated with frac sand mining, sediment can be carried into the creek causing further damage to the health of this trout stream."

¶99 Building the proposed mine on wetlands next to Trout Run Creek worried Noah Slaby, an Arcadia resident with two young children and two properties bordering the proposed site of the mine:

Of all the possible negative effects of this project, the location of the rail spur and processing facility

_____

[39] The reference is to a publicly available publication of the Wisconsin Department of Natural Resources.

43

is the most disturbing with its close proximity to a registered trout stream, river, and wetland. This river bottom is also very prone to flooding and with my own experience with farming and pasturing cattle in this low lying area, less than a mile away[,] I can't imagine trying to control piles of sand, overburden and containment ponds when such common flooding occurs. . . . [W]ater quality is dependent upon wetlands to purify the water we drink and to filter out impurities that exist in our water from field run-off and other human pollutants.

¶100 Concern about the proposed mine's potential to aggravate flooding in a flood-prone area was repeated time and time again to the Committee. For instance, Henry Schultz opposed allowing a mine "whose process and loading facilities are to be located within a flood prone area. [Because] [h]igh water won't be an unusual occurrence; it will be a recurrent problem."

¶101 Indeed, Pat and Mary Slaby, who own a farm a mile downstream from the site of the proposed mine, reiterated the flooding concern in an e-mail that was read into the record: "This past year alone the river bridge crossing had been closed on at least three different occasions . . . . We have been battling high water in our fields, roads, and basements and each year it seems to get worse." According to the Slabys, filling in these upstream wetlands would be akin to "giving up our greatest asset on battling flood water."

¶102 Kathy Lockington explained that a neighboring mine's development has caused numerous water quality problems. For example, since the sand mine was built, she has spent $550 on water quality testing that looks for both dust and

44

polyacrylamides (one of the chemicals used in frac sand mining). She explained: "Our water softener has sand. The guy came and said you have sand in your filter. I have drawn out water and if you set it in a white bucket, the sand is in there."

¶103 Clearly, the Trempealeau County Environment & Land Use Committee had substantial evidence on which to conclude that the proposed mine raises environmental concerns and would have an adverse impact upon "surface water drainage, water quality and supply," factors the Trempealeau Zoning Ordinance required the Committee to consider.

¶104 Turning to the effect of the mine on the landscape, wildlife, and recreational opportunities, Abby Johnson's e-mail read into the record stated that wetlands are "very important ecosystems that need protection from developments." The wetlands were described as seasonal home to "[v]arious species of waterfowl . . . as their breeding ground." "A rail spur would decrease the livability and functionality of these unique ecosystems that are important for maintaining a diverse population of waterfowl and plant species."

¶105 The record also demonstrates that placing a sprawling, 550-acre frac sand mine among Trempealeau County's rolling hills would change the landscape. The Trempealeau County Environment and Land Use Committee had sufficient evidence to conclude that the project would be "detrimental to or injurious to the . . . character of the surrounding area," and would have an adverse effect on "aesthetics, including but not limited to scenic beauty and the conservation of natural resources of

45

outstanding quality or uniqueness." Trempealeau County Zoning Ordinance §§ 10.04(5)(a), 13.03(3)(a)(5).

¶106 Aesthetic concerns, that is, changes to the landscape, were raised repeatedly by members of the public.[40] Duane and Theresa Matelski reported that they "marvel everyday at the breathless beauty in the ridges and valleys that make up our County. It saddens us greatly that this unique beauty is so quickly disappearing, and the eyesore of yet another mine dots what was once a beautiful vista here in Trempealeau County."

¶107 Henry Schultz noted the aesthetic degradation inherent to the project: AllEnergy's plan called for "extract[ing] sand from several sites over time that are not connected except by a network of conveyors that greatly expands the footprint of the whole operation . . . sprawling over the landscape."

¶108 Noah Slaby stated: "This driftless area has brought people here to visit and live. What incentive do young families have to stay in this area when the very values and landscape that they love continue to be compromised?" He noted that AllEnergy's representative even "commented on what a beautiful

---

[40] See VoiceStream Minneapolis, Inc. v. St. Croix Cty., 342 F.3d 818, 831 (7th Cir. 2003) ("Indeed, every circuit to consider the issue [of telecommunications siting] has determined that aesthetics may constitute a valid basis for denial of a wireless permit if substantial evidence of the visual impact of the tower was before the board."). See also Village of Menomonee Falls v. DNR, 140 Wis. 2d 579, 607, 412 N.W.2d 505 (Ct. App. 1987).

area this is, but yet he is here to change the topography of the land."

¶109 To some residents, the proposed mine would result in changes in local culture and conditions.  The mine would eliminate their pastoral lifestyles.  For example, Diane Waniorek's letter read into the record expressed her concern that she "will no longer be able to maintain the farm that has been in [her] family for over 100 years."  She explained that "[h]aving a sand mine so close to my home will decrease the property value and quality of life . . . [and] may force my family to abandon land on which [it] has lived for over a century."

¶110 Clearly, the Trempealeau County Environment & Land Use Committee had substantial evidence in the record to support its conclusion that the proposed mine would result in changes in local culture and aesthetics.

¶111 Finally, many people who lived near existing frac sand mines testified about health problems caused by sand and dust.

¶112 Bobbi and Richard Halvorsen's e-mail read into the record described problems that their family faced from the dust caused by a frac sand mine.  They eventually had to move away from the mine because their daughter had "asthma which grew progressively worse," Bobbi Halvorsen "lived with a constant headache," and their "five year old [had] continuing problems with allergies. . . ."  All of these health problems disappeared once the family moved away from the mine.

¶113 Lois Taylor, a registered nurse, reiterated these health concerns in an e-mail that was read into the record at the hearing. She stated that she believes "there needs to be a land use impact study focusing on health risks related to air and water quality . . . ." Sherie Sacia, a health worker, expressed concern in an e-mail read into the record that the health impacts of frac sand mining are unknown and that it is "[b]etter to slow the process down until we are sure of any health impacts. All of our famil[ies'] health depends on you."

¶114 Once again, health concerns——ranging from anecdotal to professionally based——were substantial evidence on which the Trempealeau County Environment & Land Use Committee could base its denial of AllEnergy's application. The Committee is required by the ordinance to analyze a proposal for non-metallic mineral mining in light of the "impacts . . . on the general health, safety and welfare of the public." Trempealeau County Zoning Ordinance § 13.01.

¶115 The Trempealeau County Environment & Land Use Committee's decision must be upheld if any reason set forth in the ordinance for denying the permit is supported by substantial evidence. Surely, a reasonable person could conclude that the public comments at the hearing were relevant, probative evidence, providing substantial evidence in the record to support the Committee's decision to deny AllEnergy's application because the proposed mine raises environmental concerns, changes the landscape, would have adverse effects on wildlife and

48

recreational opportunities, would result in changes in local culture and aesthetics, and raises public health concerns.

¶116 AllEnergy contends, however, that its experts had an adequate response to each and every one of the concerns expressed by the members of the Trempealeau County Environment & Land Use Committee who voted against the application.

¶117 AllEnergy's arguments amount to asking this court to reweigh the evidence. Reweighing the evidence is not part of the substantial evidence test or the role of this court.[41] The Committee need not have accepted an expert's testimony. It had the discretion to weigh the expert's testimony against other evidence in the record. Expert testimony, for example, cannot allay aesthetic concerns raised by a large open mine site in a beautiful part of the state.

¶118 On review of the record, we conclude that substantial evidence exists to support the Trempealeau County Environment & Land Use Committee's decision to deny AllEnergy's application for a conditional use permit.

IV

---

[41] For example, AllEnergy argues that its expert testimony rebutted public comments regarding runoff concerns. "AllEnergy's ecologist testified that the project would minimize and improve 'the current conditions by controlling runoff and storm water through construction of storm water retention basin[s] and infiltration basins as well." Brief of Petitioners-Appellants-Petitioners (AllEnergy) at 38. The Trempealeau County Environment and Land Use Committee apparently was not persuaded by AllEnergy's expert. The Committee, instead, opted to give more weight to the reports of members of the public who lived near the proposed mine site.

¶119 Finally, we address AllEnergy's request that the court "adopt a new doctrine that where a conditional use permit applicant has shown that all conditions and standards, both by ordinance and as devised by the zoning committee, have been or will be met, the applicant is entitled to the issuance of the permit." As we explained previously, this request is based on AllEnergy's assertion that AllEnergy satisfied all the specific conditions in the ordinance as a matter of law and cannot be required to satisfy subjective, generalized conditions and standards in the ordinance.

¶120 Quoting Rathkopf's The Law of Zoning and Planning, AllEnergy proposes the following rule: "If the administrative body finds compliance with the standards or requisites set forth in the ordinance, the right to the exception exists, subject to such specific safeguarding conditions which the agency may impose by reason of the nature, location, and incidents of the particular use."[42]

¶121 AllEnergy argues that other states follow this rule, but provides very little justification for our discarding precedent beyond the following cursory statement: "The rationale for recognition of the right has been that a decision to deny a CUP [conditional use permit] is arbitrary where the applicant has met the ordinance standards and where conditions

---

[42] Brief of Petitioners-Appellants-Petitioners (AllEnergy) at 45 (quoting Rathkopf § 61:37 at 61-99) (emphasis added).

can be adopted to address additional potentially-adverse impacts."[43]

¶122 We discussed AllEnergy's "entitlement" argument previously in our discussion of whether the Trempealeau County Environment & Land Use Committee kept within its jurisdiction in denying AllEnergy's application for a conditional use permit. We declined to adopt AllEnergy's argument. See Part II, ¶¶50-54, supra.

¶123 Less than a decade ago, the court in Town of Rhine v. Bizzell, 2008 WI 76, 311 Wis. 2d 1, 751 N.W.2d 780, rejected——on the merits——a nearly identical rule as the one AllEnergy urges in the instant case. In Bizzell, 311 Wis. 2d 1, ¶56, the court concluded that the entitlement argument was "without merit."

¶124 In elucidating the difference between permitted uses and conditional uses, the Bizzell court explained that "[e]ven though conditional uses may be authorized pursuant to the ordinance, that does not render them uses as of right." Bizzell, 311 Wis. 2d 1, ¶56 (citing Gail Easley, Conditional Uses: Using Discretion, Hoping for Certainty, American Planning Association Zoning Practice, May 2006, at 8).[44] Rather, the

---

[43] Brief of Petitioners-Appellants-Petitioners (AllEnergy) at 48.

[44] See also Bizzell, 311 Wis. 2d 1, ¶59:

[W]hile discussing rules that generally govern conditional uses, Anderson's American Law of Zoning states, '[t]he designation of a use in a zoning district as a conditional use does not constitute an authorization or assurance that such use will be

(continued)

Bizzell court further explicated that "[c]onditional uses are for those particular uses that a community recognizes as desirable or necessary but which the community will sanction only in a controlled manner." Bizzell, 311 Wis. 2d 1, ¶20 (citing State ex rel. Skelly Oil Co. v. Common Council, City of Deerfield, 58 Wis. 2d 695, 701, 207 N.W.2d 585 (1973)). "[U]ses subject to a conditional use permit are necessary to the community, but because they often represent uses that may be problematic, their development is best governed more closely rather than as of right." Bizzell, 311 Wis. 2d 1, ¶24. Whether a conditional use can be sanctioned depends on whether the use meets the criteria set forth in the governing ordinance.

¶125 Looking to the language of the Town of Rhine ordinance governing conditional uses in Bizzell, the Bizzell court concluded that the Town of Rhine ordinance's language in and of itself foreclosed an entitlement argument. The standards for "obtaining a conditional use permit [were] subject to significant interpretation." Bizzell, 311 Wis. 2d 1, ¶58.

¶126 For example, the ordinance at issue in Bizzell directed the zoning board to consider whether a conditional use permit would "preserve natural growth and cover and promote the natural beauty of the township." Bizzell, 311 Wis. 2d 1, ¶58. This standard, and others like it, were "simply not specific

approved.' 5 Alan C. Weinsten, Anderson's American Law of Zoning, § 34.23, at 573 (4th ed. 1997). While perhaps not dispositive, this assertion casts doubt on the Town of Rhine's entitlement argument.

enough that one can reasonably say that any use as of right exists . . . ." Bizzell, 311 Wis. 2d 1, ¶58.

¶127 Additionally, nothing in the Bizzell ordinance stated that "[i]f all requirements are met, the conditional use permit shall be granted." Bizzell, 311 Wis. 2d 1, ¶59.

¶128 AllEnergy faces the same roadblock in the instant case. The Trempealeau County ordinance uses language similar to that in Bizzell to set forth factors for the Trempealeau County Environment & Land Use Committee to consider. See, e.g., Trempealeau County Zoning Ordinance § 10.04(5)(b)15. ("adversely affect[s] the natural beauty"), § 13.01 ("wise use of natural resources"). No language in the Trempealeau County Zoning Ordinance guarantees that a conditional use permit shall be granted if all requirements are met.

¶129 AllEnergy has failed to provide a compelling reason for this court to depart from long-standing precedent. We shall therefore adhere to stare decisis and reaffirm Bizzell's rejection of AllEnergy's "entitlement" approach to conditional use permits.

V

¶130 In conclusion, we affirm the decision of the court of appeals. On certiorari review, we accord the decision of the Trempealeau County Environment & Land Use Committee a presumption of validity and correctness. AllEnergy has not successfully rebutted that presumption. The Trempealeau County Environment & Land Use Committee kept within its jurisdiction in denying AllEnergy's application for a conditional use permit.

53

It relied on standards that the Trempealeau County Board of Supervisors adopted and explicitly directed the Committee to consider. The Committee's denial of AllEnergy's application was based on substantial evidence in the record.

¶131 Finally, we reject AllEnergy's entitlement approach to conditional use permits. This approach has no basis in our precedent or the language of the Trempealeau County ordinance; it has been rejected previously by the court. Without a compelling reason, and none has been given, the court will not overturn settled law.

¶132 For the reasons set forth, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶133 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I respectfully concur in the mandate. In my view, the lead opinion and the dissent have made this case much more complicated and potentially more far-reaching in effect than it should be. This case can and should be decided narrowly: ours is a certiorari review.

¶134 Our review in this case is limited. On certiorari review we examine:

> (1) whether the [Trempealeau County Environment & Land Use Committee ("the Committee")] kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

Oneida Seven Generations Corp. v. City of Green Bay, 2015 WI 50, ¶41, 362 Wis. 2d 290, 865 N.W.2d 162 (quoting Ottman v. Town of Primrose, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411).

¶135 Moreover, our review in this case must be deferential. The decision of the Committee "is entitled to a presumption of correctness and validity." Sills v. Walworth Cty. Land Mgmt. Comm., 2002 WI App 111, ¶6, 254 Wis. 2d 538, 648 N.W.2d 878.

¶136 I cannot conclude, given these controlling legal standards, that the Committee's decision is invalid. See Ottman, 332 Wis. 2d 3, ¶34 ("Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality, an administrative agency, or an inferior tribunal."). I agree with the lead opinion that the Committee's decision survives the specific challenges made by AllEnergy

1

Corporation and AllEnergy Silica, Arcadia, LLC ("AllEnergy") under this framework. That is, I agree that the Committee kept within its jurisdiction and that the evidence was such that it might reasonably have made the determination in question. Although AllEnergy was able to complete its application shortly before a moratorium on such projects went into effect, as the court of appeals explained and as the lead opinion reiterates, legitimate environmental and health concerns, among others, supported the Committee's decision to nevertheless deny the permit. The disposition of this case is appropriate when one recognizes that decisions of the type made by the Committee involve "local concerns" best handled at the local level. See id., ¶51.[1]

¶137 Unfortunately, the lead opinion examines a number of matters not necessary to this case and is not written narrowly

---

[1] The dissent suggests it is improper to state that the disposition of this case is in some way tied to the fact that this appeal involves local decision-making. The dissent fails to recognize that the correct disposition of this case depends largely on the limited and deferential nature of our certiorari review——a standard of review applied in part because we pass upon the decision of a local governmental entity. It is recognized, for example, that "[a] certiorari court may not substitute its view of the evidence for that of the municipality." Ottman v. Town of Primrose, 2011 WI 18, ¶53, 332 Wis. 2d 3, 796 N.W.2d 411. I of course agree that the Committee, like any other governmental unit, must conduct itself according to the law. But no one disputes, for instance, that the Committee "proceeded on a correct theory of law"; that prong of certiorari review was not invoked on this appeal. To say that the local nature of the issues in this case bears upon the outcome is consistent with our precedent and thus upholds the rule of law rather than thwarts it.

enough for me to join it. For example, the lead opinion engages in a discussion of the constitutionality of certain of Trempealeau County's ordinances, in disregard of the basic judicial principle that courts do not adjudge the constitutionality of legislation unless it is necessary to do so. See, e.g., Cty. of Milwaukee v. Williams, 2007 WI 69, ¶63, 301 Wis. 2d 134, 732 N.W.2d 770 ("[I]t is fundamental that a court should not reach a constitutional question unless it is essential to the determination of the case before it."). It is most certainly not necessary to reach a constitutional question on this certiorari review.

¶138 Indeed, one would think that if the lead opinion's constitutional detour were necessary to our decision, the word "constitution" might appear somewhere in AllEnergy's briefing. It does not. That word does appear, however, in the Committee's briefing, where it explains that "of course, AllEnergy has made no argument in this case that the Zoning Ordinance is unconstitutional." And even if AllEnergy were attempting to sneak a constitutional argument in through the back door, I fail to see why its gambit should be rewarded. See, e.g., Cemetery Servs., Inc. v. Wis. Dep't of Regulation & Licensing, 221 Wis. 2d 817, 831, 586 N.W.2d 191 (Ct. App. 1998) ("For us to address undeveloped constitutional claims, we would have to analyze them, develop them, and then decide them. We cannot serve as both advocate and court. For this reason, we generally choose not to decide issues that are not adequately developed by the parties in their briefs."). Little more need be said to

3

illustrate the gratuitousness of the lead opinion's discussion in this regard.

¶139 I also part ways with the lead opinion's consideration of AllEnergy's request that this court "adopt a new doctrine" that a conditional use permit applicant has a "right to the permit if the applicant shows that ordinance conditions have been, or will be met and if concerns of potentially-adverse impacts can be addressed by imposing additional conditions." This issue, at least, is properly before the court. The request, however, comprising the last few pages of AllEnergy's brief, turns out to be moot. The Committee responded to AllEnergy's argument in part by stating that the law already required that "[i]f an applicant is able to unilaterally satisfy all requirements and considerations of the ordinance, and no substantial evidence is offered in opposition, for all practical purposes the body would be required to grant the permit," but added that AllEnergy had <u>not</u> established that it had met this standard. Consequently, the question boiled down to whether AllEnergy's permit application was properly denied. And, as discussed, the Committee's decision that AllEnergy's application should be denied under local law is valid. Consequently, the court need not and should not weigh in on the necessity or propriety of adoption of AllEnergy's proposed rule in this case.

¶140 In sum, our review in this case is limited and deferential, and I agree that the decision of the court of appeals should be affirmed. Of course, the appropriate legislative body is always free to amend these ordinances.

4

However, in the case now before us, the presumption of correctness and validity of the Committee's decision has not been overcome. That is where our analysis should end.

¶141 For the foregoing reasons, I respectfully concur in the mandate.

¶142 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins in this concurrence.

5

¶143 DANIEL KELLY, J. *(dissenting)*. We are "a government of laws, and not of men."[1] Unless one is trying to obtain a conditional use permit from a municipality's land-use committee, in which case the opposite is true. A government of laws requires us to conform our actions to pre-existing standards with discernible content. A government of men requires us to conform our actions to a governing authority's ad hoc wishes. Because our decision today condones the latter, I respectfully dissent.

¶144 AllEnergy Corporation and AllEnergy Silica, Arcadia, LLC (collectively, "AllEnergy") have an interest in a parcel of property in an area zoned to allow non-ferrous mining as a conditional use (I will refer to this property as the AllEnergy Property[2]). AllEnergy wishes to mine sand on that property, and so (along with the title owners) filed a conditional use permit application with the Committee. The Committee denied the application, citing the various concerns discussed in the court's opinion.

¶145 Our obligation, in reviewing this case, was to determine whether the Committee properly denied the application. A municipal entity commits reversible error if it exceeds its jurisdiction, incorrectly applies controlling legal principles,

---

[1] J. Adams, 4 Life and Works of Johns Adams 99, 106 (1851) (Novanglus Letter No. VII) (referring to the definition of a "republic" as understood by Aristotle, Livy, and Harrington).

[2] AllEnergy's application for a conditional use permit identifies Gary Haines, Cortland Farm LLC, and Francis Pronschinske as the title owners of the property.

acts arbitrarily by exercising its judgment instead of its will, or bases its decision on insufficient evidence. <u>Oneida Seven Generations Corp. v. City of Green Bay</u>, 2015 WI 50, ¶41, 362 Wis. 2d 290, 865 N.W.2d 162.

¶146 The Committee exceeded its jurisdiction when it took upon itself the task of determining whether a sand mine, as a general proposition, is an appropriate use of the AllEnergy Property. This is a determination already answered by the Trempealeau County Board, and the Committee had no authority to second-guess the wisdom of its decision. The Committee also acted arbitrarily by failing to apply appropriate pre-existing standards to the specific proposal contained in AllEnergy's application.[3]

I

¶147 The Committee exceeded its jurisdiction for the same reason our opinion is in error today. That is, we both failed to account for what a County Board accomplishes when it includes certain conditional uses in a zoning district. Both the Committee and our opinion treat the conditional use as a piece of unfinished zoning business, which the Committee may complete when an owner applies for a permit. But a conditional use is not a loose end. It is a determination that the identified use

---

[3] This is not to say, however, that I believe the record is sufficiently developed to conclude that the Committee should have issued the conditional use permit. Because the Committee did not complete its assigned task, as I discuss below, the proper course would be to remand the matter to the Committee for further proceedings.

is compatible with the zoning district, and is subject only to appropriate conditions to control for the potentially hazardous aspects of the specific proposal under consideration.

¶148 Our error caused us to review the wrong question. We (and the Committee) inquired into the general advisability of operating a sand mine on the AllEnergy Property. Our duty was to accept the County Board's determination that sand mining, with all the incidents that necessarily accompany such a use, is appropriate on that property. If we had done this, our attention would have been focused where it belongs, to wit, on whether AllEnergy's specific proposal created such hazards that they could not be controlled even with the imposition of appropriate conditions.[4]

A

¶149 By juxtaposing "conditional uses" and "permitted uses," we can gain some useful insight into the essential nature of the former. That insight will, in turn, illuminate how the

---

[4] The concurring opinion says the "disposition of this case is appropriate when one recognizes that decisions of the type made by the Committee involve 'local concerns' best handled at the local level." Concurrence, ¶136. This is a category error. The "localness" of the governmental body making the decisions has absolutely nothing to say about whether it made them correctly. The rule of law does not lose its grip as the scope of the governmental body scales down. The smallest unit of government owes the same duty as the greatest: To conduct itself according to law. We defer to a local government's policy decisions because they are outside the remit of the judiciary, but the legality of its decisions never is. So to suggest the disposition of this case has anything to do with the level of government making the decision is to miscategorize the nature of our inquiry.

Committee improperly took to itself authority to address a question already answered by the County Board.

¶150 The chief characteristic of a permitted use is that it is one to which an owner may put his property as a matter of right. Town of Rhine v. Bizzell, 2008 WI 76, ¶19, 311 Wis. 2d 1, 751 N.W.2d 780 ("In general, zoning ordinances provide landowners with permitted uses, which allow a landowner to use his or her land, in said manner, as of right."). Thus, for example, a person desiring to build a residence in a residential zoning district need only comply with whatever parameters may exist in that district (such as density, building size, setbacks, height, etc.). So long as that zoning pertains, and the proposed development does not exceed the district's explicit limitations, the municipality may not deny a building permit.[5]

¶151 This is not the case with "conditional uses." As we have said before, a conditional use classification "allows a property owner 'to put his property to a use which the ordinance expressly permits when certain conditions [or standards] have been met.'" Id., ¶21 (brackets in original; emphasis added) (quoting State ex rel. Skelly Oil Co. v. Common Council, City of Delafield, 58 Wis. 2d 695, 701, 207 N.W.2d 585 (1973)). Such a

---

[5] "Permissible uses are by-right uses, i.e., the uses are named in the zoning ordinance and a property owner has the right to establish the use so long as it conforms to the standards and criteria of the zoning ordinance." Town of Rhine v. Bizzell, 2008 WI 76, ¶50, 311 Wis. 2d 1, 751 N.W.2d 780 (internal marks omitted).

classification allows a municipality "to cope with situations where a particular use, although not inherently inconsistent with the use classification of a particular zone, may well create special problems and hazards if allowed to develop and locate as a matter of right in [a] particular zone." Skelly Oil Co., 58 Wis. 2d at 701. The purpose of conditional use classifications, therefore, is to provide for "those particular uses that a community recognizes as desirable or necessary but which the community will sanction only in a controlled manner." Bizzell, 311 Wis. 2d 1, ¶20; see also 3 Edward H. Ziegler, Rathkopf's The Law of Zoning and Planning § 61.1 at 61-3 (4th ed. 1993) (stating the purpose of the conditional use classification is to provide "same-site-specific discretionary review of proposed uses that are generally deemed to be presumptively compatible or desirable in a particular area or zoning district."). They are "necessary to the community, but because they often represent uses that may be problematic, their development is best governed more closely rather than as of right." Bizzell, 311 Wis. 2d 1, ¶24.[6]

¶152 From this we may distill that a conditional use is one a municipality has determined is "desirable" or "necessary to the community" and is not "inherently inconsistent with the use classification of a particular zone . . . ." Id., ¶¶23-24. But

---

[6] "Current zoning journals also support the conclusion that the common, accepted zoning practice is to provide permitted uses as of right and then, in addition to permitted uses, the ordinance may provide for conditional uses." Bizzell, 311 Wis. 2d 1, ¶50.

it is also one that "may well create special problems and hazards if allowed to develop and locate as a matter of right . . . ." Id., ¶23. So a "conditional use" listing is a declaration that "the community will sanction [it] only in a controlled manner." Id., ¶20. The manner in which the community exercises its control is by allowing development to proceed only "'when certain conditions [or standards] have been met.'" Id., ¶21 (quoting Skelly Oil Co., 58 Wis. 2d at 701) (brackets in Bizzell).

¶153 This means, of course, that a property owner is not entitled to a conditional use permit as a matter of right. If the use is dependent on satisfaction of "certain conditions or standards," it necessarily follows that property owners have no guarantee a permit will issue. We have previously said as much: "'[T]he designation of a use in a zoning district as a conditional use does not constitute an authorization or assurance that such use will be approved.'" Bizzell, 311 Wis. 2d 1, ¶59 (quoting 5 Alan C. Weinstein, Anderson's American Law of Zoning § 34.23, at 573 (4th ed. 1997)).

¶154 However, just because a property owner has no guarantee a permit will issue does not mean a municipal committee has free rein to deny an application. One of these propositions is not the negation of the other, and we have been very careful not to say so. For example, in Bizzell we considered whether a municipality could create a zoning district in which there were no permitted uses, only conditional uses. Mr. Bizzell asserted that there must be some use to which a

6

person may put his property as a matter of right. See id., 311 Wis. 2d 1, ¶14. The Town of Rhine responded that "conditional uses are permitted uses because once the standards have been satisfied a landowner is 'entitled' to the conditional use." Id., ¶55. We rejected that argument as lacking any merit. See id., ¶¶55-56. But we did so on the basis that "[p]ermitted uses and conditional uses are different" in large part because there is no absolute right to the latter. Id., ¶¶55-56 (citing S. Kemble Fischer Realty Trust v. Bd. of Appeals of Concord, 402 N.E.2d 100, 103 (Mass. App. Ct. 1980) (stating that "[n]o one, of course, has an absolute right to a special permit")). We did not say a municipality could deny the application because it does not believe the conditional use is appropriate for the applicant's property. We just affirmed the proposition that there is never an absolute (that is, unconditional) right to a permit.

¶155 And in Edward Kraemer & Sons, Inc. v. Sauk County Board of Adjustment, 183 Wis. 2d 1, 515 N.W.2d 256 (1994), we said the court of appeals was mistaken in believing that a "mineral extraction permit had to be granted and if conditions were necessary to ensure compliance with the ordinance, the Board was obligated to fashion them." Id. at 7. But that was in the context of determining who bears the burden of establishing compliance with the municipality's identified standards. See id. at 16-17. We did not say the municipality could deny an application because the proposed use comprised the essential attributes of a mining operation.

7

¶156 The court of appeals has not been similarly circumscribed. In Delta Biological Resources, Inc. v. Board of Zoning Appeals of Milwaukee, 160 Wis. 2d 905, 467 N.W.2d 164 (Ct. App. 1991), the appellant asserted that "a presumption arises that the use serves the public interest from the fact that the legislature permits it, and the special use[7] itself, therefore, presumes a legislative determination that a public need for the use exists." Id. at 911 (footnote added). From this Delta Biological argued that "because the legislature's provision for a special use exception is a determination that such use does not materially affect the area adversely, denial is proper only upon proof that adverse impact upon public interest is greater than that which might be normally expected." Id. at 912.

¶157 The court of appeals disagreed, stating "[w]e reject Delta's argument because its linchpin, the presumption that the conditional use serves the public interest, does not exist in Wisconsin." Id. The court of appeals accurately identified that argument as the linchpin in determining whether there are circumstances in which a municipality must grant a conditional use permit. See id. at 911-12. What it did not identify is any authority for its surprising assertion that there is no presumption that a conditional use serves the public interest.

---

[7] "Special use" is synonymous with "conditional use." See, e.g., Bizzell, 311 Wis. 2d 1, ¶20 ("ordinances may also provide for conditional uses by virtue of a special use or conditional use permit.").

Nor did it identify any rationale that would make it an accurate description of the state of the law.

¶158 Our opinion today recognizes that AllEnergy and Delta Biological's arguments share the same linchpin. After quoting Delta Biological's authority-free statement of the law, it concludes that "our precedent dictates that no presumption exists that a conditional use is ipso facto consistent with the public interest or that a conditional use is a use as of right . . . ." Lead op., ¶55. The latter part of the quote is not material to the analysis because no one equates conditional uses and uses as of right. But whether a "conditional use is ipso facto consistent with the public interest" is a question of the greatest moment here. Indeed, AllEnergy's case succeeds or fails based on whether Delta Biological answered that question correctly.

¶159 Delta Biological's answer is not correct. Bizzell——a supreme court decision considerably more recent than Delta Biological——teaches that a conditional use is one a municipality has determined is "desirable" or "necessary to the community," and is not "inherently inconsistent with the use classification of a particular zone . . . ." See Bizzell, 311 Wis. 2d 1, ¶¶23-24. It also tells us that when a community identifies a "conditional use" with a property, it is sanctioning that use so long as it is done "in a controlled manner." See id., ¶20. This description of conditional uses is entirely inconsistent with the court of appeals' statement that "the presumption that the conditional use serves the public interest[] does not exist

9

in Wisconsin." See Delta Biological, 160 Wis. 2d at 912. We should not assume that a municipality would "sanction" a use that is contrary to the public interest. And the principle of non-contradiction should prevent us from concluding that a use that is "desirable" or "necessary to the community" can somehow simultaneously not serve the public interest.

¶160 This places substantial limitations on the reasons a municipality can give for denying a conditional use permit. Because the types of uses identified as conditional uses are "sanctioned," and either "desirable" or "necessary to the community," an application for such a use may not be denied because the owner proposes to engage in that type of use. That is to say, if an ice-cream shop is a conditional use, a land-use committee may not deny a permit because the committee's members object to the owner selling ice-cream on his property. Such objections are in order when the municipality adopts (or amends) its zoning ordinance and considers which conditional uses (if any) to include in each of its zoning districts. Upon adding a conditional use to a zoning district, the municipality rejects, by that very act, the argument that the listed use is incompatible with the district. See, e.g., People's Counsel v. Mangione, 584 A.2d 1318, 1322-23 (Md. Ct. Spec. App. 1991) (explaining that a zoning ordinance providing for a special exception is a legislative predetermination that such special exception, subject to certain guides and standards, is compatible with other uses identified for that zone); State ex rel. Straatmann Enters., Inc. v. Cty. Of Franklin, 4 S.W.3d 641,

10

650 (Mo. Ct. App. 1999) (explaining that a conditional use is one authorized by a local legislative body that, in the absence of having met certain conditions, may otherwise be incompatible with the location).

¶161 An application for a conditional use permit is not an invitation to re-open that debate. A permit application is, instead, an opportunity to determine whether the specific instantiation of the conditional use can be accomplished within the standards identified by the zoning ordinance. See, e.g., Matter of Cove Pizza v. Hirshon, 61 A.D.2d 210, 212-13 (N.Y. App. Div. 1978) (where a special use ordinance allows for certain types of restaurants, board cannot deny application because it objects to the allowed special use). A land-use committee, therefore, must focus on the owner's specific proposal and determine whether that proposal can be made compatible with the zoning ordinance's standards. See, e.g., id.; see also DeMaria v. Enfield Planning and Zoning Comm'n, 271 A.2d 105, 106-108 (where zoning ordinance provides for special use and identifies requirements for obtaining such permit, board cannot deny application because it does not like the esthetic effect of the proposed apartment complex or because the board does not believe the proposal presents a satisfactory image of what apartments in the town should look like).

B

¶162 Our decision today would look considerably different if we had taken our guidance from Bizzell instead of Delta Biological. The logic behind Bizzell teaches us that (as

11

relevant here) testimony related to a proposed use of property has two distinct functional purposes depending on the stage of the zoning process in which it is offered. One stage relates to a municipality's adoption or amendment of a zoning ordinance. The other relates to the consideration of an owner's application for a use permit.

¶163 When the Trempealeau County Board writes its zoning code, or considers amendments, the testimony it needs, and is appropriate to consider, is whether a type of use is compatible with a designated zoning district. This is the stage at which the County has the greatest discretion in determining what may, and may not, be allowed on various tracts of property. See Wis. Stat. § 59.69(13) ("The powers granted in this section shall be liberally construed in favor of the county exercising them . . . ."); see also Cohen v. Dane Cty. Bd. of Adjustment, 74 Wis. 2d 87, 90, 246 N.W.2d 112 (1976). It is also the stage at which it is necessary to draw most deeply on the wisdom, experience, and discretion of the community and its representatives. The community's testimony plays a key role in answering these land-use questions wisely.

¶164 Once the County adopts its zoning code, however, testimony about a proposed use has a narrower function. Its purpose is to help the Committee determine whether the proposal satisfies the parameters already adopted by the Trempealeau County Board. And when the testimony relates to a "conditional use," its function is to provide the information necessary to

12

determine what conditions to impose on the use.[8] In making this determination, the Committee must interpret and apply the zoning code with a bias towards the free use of property. See, e.g., Cohen, 74 Wis. 2d at 91 (zoning ordinances are to be construed "in favor of the free use of private property.").

1

¶165 Consequently, the zoning ordinance's terms inform the Committee of both the scope of its discretion, as well as the type of testimony on which it may rely in considering an application for a conditional use permit. The AllEnergy Property bears the EA-2 zoning designation, which Trempealeau County describes as follows:

> This district preserves class I, II and III soils and additional irrigated farmland from scattered residential developments that would threaten the future of agriculture in Trempealeau County. The district is also established to preserve woodlands, wetlands, natural areas and the rural atmosphere of the County. . . .

Trempealeau County, Wis., Zoning Ordinance § 2.03(2). Chapter 13 of Trempealeau County's zoning ordinance makes non-ferrous mineral mining a conditional use in the EA-2 district:

> Non-metallic mining is a conditional use of land in the EA, EA-2, PA and TA districts. In addition to taking into consideration the general criteria governing the granting of conditional use permits under Sec. 10.04, the County shall specifically

---

[8] It is conceivable that there could be no set of conditions sufficient to control the potential adverse impacts of a specific instantiation of a conditional use. However, the Committee did not suggest that was the case, so this proposition needs no further consideration here.

analyze non-metallic mineral mining proposals in light of the County's interest in providing for the wise use of the natural resources of the county, aesthetic implications of the siting of such a mine at a given location and the impacts of such a mining operation on the general health, safety and welfare of the public. Each application shall be judge on its own merits. Subject only to the standards set forth in this section and in the zoning ordinance as a whole, it is impossible to prescribe the criteria upon which such a permit may be granted in each and every case.

Trempealeau County, Wis., Zoning Ordinance § 13.01.[9]

¶166 Bizzell says these zoning provisions establish that the Trempealeau County Board has legislatively determined that sand mining is not inherently inconsistent with the EA-2 zoning district. See id., 311 Wis. 2d 1, ¶23. Bizzell also says we must conclude from these provisions that sand mining is a type of use sanctioned by the County Board and deemed desirable, or necessary to the community, in this district. See id., ¶24.

¶167 Presumably, when the members of the Trempealeau County Board authorized non-ferrous mineral mining as a conditional use of the AllEnergy Property, it knew at least the basics about the type of activity it was designating as sanctioned and either necessary or desirable. I trust the members would not be surprised to learn that sand mining will change the topography of the property, alter the course of surface waters, create dust, make the property unavailable for agricultural uses (at

---

[9] I cite to Trempealeau County, Wis., Zoning Ordinance § 13.01 as it existed at the time AllEnergy filed its conditional use application. That zoning ordinance, however, has since been amended. All references to § 13.01 in this dissent are to the version existing at the time AllEnergy filed its application.

14

least until remediation and maybe thereafter), and not contribute to scenic beauty.

¶168 These are expected and necessary consequences of sand mining, and are baked into the County Board's decision that sand mining should nonetheless be allowed on the AllEnergy Property, subject only to appropriate conditions. Just as a municipality may not deny a conditional-use application for an ice-cream parlor because the owner intends to have ice-cream on the premises, the Committee may not deny AllEnergy's application because his proposed use will comprise the essential characteristics of a sand mine.

¶169 The people of Trempealeau County should be congratulated on their interest in, and concern for, their community. The testimony they offered was, for the most part, relevant, instructive, and trenchant. Some of it, however, related to the wisdom of the Trempealeau County Board's determination that sand mining is a sanctioned and desirable or necessary use in AllEnergy's zoning district.

¶170 Thus, for instance, various community members objected to AllEnergy's proposal because it would affect the landscape, detract from scenic beauty, impact the conservation of natural resources, or eliminate their pastoral lifestyle. Members of the Committee raised similar concerns. Committee member George Brandt rejected AllEnergy's application, in part, because of "the significant change to the landscape and to the local cultural and social conditions." Committee member Ed Patzner

15

frankly stated a sand mine is not compatible with this zoning district:

> Well, I represent the Farm Service Agency and I'm for agriculture. Agriculture has a history of bringing stability and jobs to our local economy, where sand mines have a history of boom or bust on the local economy, therefore destroying good productive agricultural land is not a wise decision. We don't want to destroy our outdoor recreation potential, like hunting, biking and other activities that attract visitors, retirees and people that love scenic beauty who are close to work and live here.

Committee member Jeff Bawek was no less blunt in his conclusion that a sand mine simply does not belong on the AllEnergy Property:

> Based on information given as referenced and my own findings, along with public concerns given at this meeting, this siting does not seem to be in the best interest of our citizens nor in the best use of our natural resources of Trempealeau County . . . . Trout Run Creek and the close proximity to the Trempealeau River deem this site as poor.

¶171 All of this testimony, and the concerns raised by the Committee members, appear to be well-founded and offered in good faith. But it is also all directed at a question they had no authority to address. Trempealeau County has legislatively disagreed with Mr. Bawek on whether a sand mine on the AllEnergy Property is in the best interest of the community, or is a "poor" site. Also, we should presume the County was aware of the relative economic benefits of mines and farms (as described by Mr. Patzner). But the County legislatively disagreed with him as well. So, too, with Mr. Brandt's concern about the cultural and social implications of developing a mine on the AllEnergy Property. And the County surely knew, when it decided

16

that a mine would be a necessary or desirable use of the AllEnergy Property, that it would change the landscape, be less attractive, and affect natural resources and recreational activities.

¶172 The County knows a sand mine will do and be all these things, but nonetheless declared them unobjectionable on the AllEnergy Property. So although the testimony and concerns described above are valid, they should have been raised when the County was developing its zoning ordinance in the first place. When, as here, the task is to apply the zoning decisions already made to a conditional use permit application, the Committee lacks authority to second-guess the County Board's legislative decisions.

2

¶173 Whether the specific attributes of AllEnergy's proposed mining operation would comply with all the necessary criteria upon which a permit may be conditioned is a question of an altogether different nature. Here, the Committee's specific task was to decide whether the imposition of an appropriate set of conditions could sufficiently control for the "special problems and hazards" this type of use presents. See Bizzell, 311 Wis. 2d 1, ¶23; see also Halfway House v. City of Waukegan, 641 N.E.2d 1005 (Ill. App. Ct. 1994) (city could impose reasonable conditions such as limiting halfway house to 32 residents); Council Rock Sch. Dist. v. Wrightstown Twp. Zoning Hearing Bd., 709 A.2d 453 (Pa. Commw. Ct. 1998) (special exception uses may require imposition of "reasonable conditions

17

for the protection of the health, safety, and welfare of the community which the applicant must meet"). The community's concerns about AllEnergy's specific implementation of that use are not only relevant, they are critical to the Committee's deliberations over the permit application.

¶174 Although the community offered a wealth of information relevant to this task, the Committee used it for the wrong purpose. It should have used the testimony to determine what specific standards AllEnergy would be required to satisfy before obtaining a sand mining permit. Instead, the Committee used the testimony to address a question already answered by the Trempealeau County Board, to wit, whether it would be advisable to operate a sand mine on the AllEnergy Property. That is a legislative determination already settled by § 13.01 of the zoning code, and the County Board settled it in AllEnergy's favor.

¶175 The mismatch between the community's testimony and the question the Committee answered becomes incandescent upon review of the Committee's justification for denying AllEnergy's application. Community members offered heartfelt and reasoned input on the proposed mine's impact on nearby Trout Run Creek and associated wetlands, surface water drainage, the health effects of wind-borne dust, the potential consequence of flooding in the vicinity, water quality, and the continued viability of various ecosystems. As the court's opinion demonstrates, each of these topics relates to standards the

18

zoning code requires the Committee to consider in ruling on AllEnergy's application.

¶176 But the Committee did not use the testimony to determine what conditions it might be necessary to impose on AllEnergy's planned use. It instead acted as though it was determining, in the first instance, whether sand mining was compatible with the AllEnergy Property. Committee member Kathy Zeglin, for instance, said she had

> numerous environmental concerns about the significant wetlands in the area, the river at this point historically was and is constantly changing it is very hard to plan anything on a long range basis. I'm very concerned with the water table in the area——it is very high. I haven't been convinced that it will not be disturbed.

Committee member George Brandt expressed similar concerns:

> [T]he possibility of possible significant danger to ground water, by processes involved in mining and processing, and the high capacity well . . . . [W]etland location is too close to sensitive water and wildlife resources and number 2 is the possibility of significant damage to groundwater by processes involved in mining and high capacity well.

Committee member Ed Patzner noted "[t]here are health concerns with mining so we need to protect our residents." And finally, Committee member Jeff Bawek observed that "[s]oil around and in the site bring into question the potential for water problems."

¶177 Each of these concerns is entirely legitimate. And if the Committee had the authority to determine whether sand mining should be listed as a conditional use in the zoning district encompassing the AllEnergy Property, perhaps this would have led them to say "no." But that was not its duty, and in acting as

19

though it was, it exceeded its jurisdiction and usurped the Trempealeau County Board's authority to answer that question.

II

¶178 There is some disagreement about how specific an ordinance governing issuance of conditional use permits must be to prevent arbitrary decision-making. We have recognized that they at least "must be sufficiently specific . . . to allow for judicial review." Bizzell, 311 Wis. 2d 1, ¶21 n.9 (citing 3 Kenneth H. Young, Anderson's American Law of Zoning § 21.09, at 709 (4th ed. 1996) (discussing the specificity of standards)). An ordinance does not satisfy this requirement if it "'fails to provide suitable standards where it confers on a board [ ] "unlimited discretion to condition the issuance of the permit on the basis of such norms or standards as it may from time to time arbitrarily determine."'" Bizzell, 311 Wis. 2d 1, ¶21 n.9 (citing 3 Young at 711). Some courts strike ordinances as insufficiently specific when they simply require that the conditional use be in the "public interest," promote the "general welfare," or are "'consistent with the purpose or intent of the zoning ordinance.'" Bizzell, 311 Wis. 2d 1, ¶21 n.9 (quoting Daniel R. Mandelker & Michael Allan Wolf, Land Use Law § 6.03, at 6-6 (5th ed. 2003) (one set of quotations omitted); see, e.g., Clark v. Bd. of Appeals, 204 N.E.2d 434 (Mass. 1965) (rejecting zoning ordinance as too broad); Fitanides v. Crowley, 467 A.2d 168 (Me. 1983) (finding portion of zoning ordinance unconstitutional because it did not provide the board with "specific guidelines that allow the board to

20

determine what special characteristics of a proposed use render it detrimental to the public health, safety or general welfare of the neighborhood."). Others uphold similar ordinances, citing the need for flexibility in the administration of conditional use permits. Bizzell, 311 Wis. 2d 1, ¶21 n.9; see, e.g., Burrell v. Lake Cty. Plan Comm'n, 624 N.E.2d 526 (Ind. Ct. App. 1993)(concluding that that the complained of "health, safety, and general welfare standard" was not improper); Schultz v. Bd. of Adjustment, 139 N.W.2d 448 (Iowa 1966) (concluding that a general zoning ordinance was "constitutionally adequate and [gave] reasonably sufficient guidelines governing the grant or denial of a conditional use permit for operation of a sanitary landfill.").

¶179 The court's opinion today identifies a lengthy list of standards AllEnergy must navigate en route to issuance of a conditional use permit. Some are relatively specific.[10] Others

---

[10] For example, Trempealeau County Zoning Ordinance § 10.04(5)(b) requires the Committee to consider, amongst other criteria:

1. Whether the proposed project will adversely affect property in the area.

2. Whether the proposed use is similar to other uses in the area.

3. Whether the proposed project is consistent with adopted Trempealeau County plans or any officially adopted town plan.
. . . .

7. Whether the proposed use creates noise, odor, or dust.

(continued)

are as broad as those struck down in other jurisdictions.[11] There may be legitimate debate about where to place each of these standards on the continuum between "sufficiently specific" and "unbridled discretion." But there should be no debate that an explicit refusal to identify all of the applicable standards rings the "unbridled discretion" bell, and smartly.

¶180 Whatever success Trempealeau County may have in convincing us its standards are sufficiently specific, it forfeits by giving itself an escape hatch so generous it makes the standards superfluous. As our decision today acknowledges,

---

. . . .

11.      Provision for proper surface water drainage.

. . . .

13.      Whether the proposed project creates excessive exterior lighting glare or spillover onto neighboring properties.

. . . .

16.      Whether the proposed project would adversely affect any historic or archeological sites.

[11] The Committee must assess an application for a sand mining permit "in light of the County's interest in providing for the wise use of the natural resources of the county, aesthetic implications of the siting of such a mine at a given location and the impacts of such a mining operation on the general health, safety and welfare of the public." Trempealeau County, Wis., Zoning Ordinance § 13.01. Nor may the Committee issue a conditional use permit unless it first determines "the proposed use at the proposed location will not be contrary to the public interest and will not be detrimental or injurious to the public health, public safety, or character of the surrounding area." Trempealeau County, Wis., Zoning Ordinance § 10.04(5)(a).

the Committee "is not limited to considering the factors specified in the ordinance." Lead op., ¶41. Instead, it may look to "additional factors as are deemed by it to be relevant to its decision making process." Trempealeau County, Wis., Zoning Ordinance § 10.04(5)(b). This is not an isolated sentiment——the County is committed to not letting the listed standards cabin its discretion: "Subject only to the standards set forth in this section and in the zoning ordinance as a whole, it is impossible to prescribe the criteria upon which such a permit may be granted in each and every case." Trempealeau County, Wis., Zoning Ordinance § 13.01.

¶181 So the County reserves to itself the right to make up the standards as it goes along. But the whole point of requiring a set of knowable standards is to limit the bases on which the County may deny a permit. As we noted in Bizzell, a zoning ordinance may not confer on the County "unlimited discretion to condition the issuance of the permit on the basis of such norms or standards as it may from time to time arbitrarily determine." Id., 311 Wis. 2d 1, ¶21 n.9 (quoting 3 Young, § 21.09 at 711) (internal marks omitted). This unbridled discretion soundly defeats any attempt at judicial review. If the Committee may announce a standard at the same time it rules the applicant failed to satisfy it, what are we to review? How closely the post hoc standard conforms to the evidence it was designed to match? That's a rhetorical inquiry, not judicial review.

23

¶182 Ultimately, creating standards at will gives rise to the same problem as the vague "wisdom" and "public interest"-type standards. It forces permit applicants to play the "guess what's in my head" game with the Committee. AllEnergy consulted the ordinances in an attempt to discern what standards its application must satisfy to get a conditional use permit from the Committee. At the hearing, it listened as the Committee members touched the ordinance talismans before voting against the application. It learned the Committee members had concerns about a sand mine's effect on wetlands, trout streams, soil, beauty, recreation, topography, culture, and farming (to name a few). What it did not learn was anything about why the Committee members thought AllEnergy's specific proposal would immanentize their concerns. Just as it had to guess at what might cause the Committee to deny the application while drafting it, AllEnergy must now retrospectively guess at what could be done to allay the members' inchoate fears.

¶183 Not coincidentally, that is also what we must do. The thing we are supposed to review is still secreted away in the Committee members' minds. The generalized concerns they expressed certainly track the ordinance's language, but our job is not to evaluate whether they can repeat that language while denying an application. It is to determine whether the Committee properly measured AllEnergy's specific proposal against knowable and certain standards, and then determined whether the imposition of appropriate conditions would allow implementation of the proposal while simultaneously protecting

24

the public's legitimate interests. Only the Committee members can know whether they did this, because no evidence of it made its way into the record.

¶184 A proper record, and proper exercise of discretion, would demonstrate the Committee actually engaged with the specifics of AllEnergy's proposal, and then determined whether appropriate conditions would protect against the hazards of this type of conditional use. So for example, after identifying that sand mines in general might threaten Trout Run Creek and surrounding wetlands, the Committee should have informed AllEnergy of the nature of the threat it feared and given it an opportunity to develop an alleviating condition. Flooding is apparently a recurrent event in this area, so the Committee could have, and should have, required AllEnergy to develop a condition that would control for such an eventuality. Blowing dust consequent upon sand mining potentially has adverse health effects, so the Committee should have required AllEnergy to quantify the problem and propose a condition to address it. And so on with each of the specific issues raised by the community or Committee members. This is the Committee's core function, and it was left undone.

¶185 Because the Committee did not complete its assigned task, its decision to reject AllEnergy's application reflects an exercise of will, not judgment. "Judgment" would have been the result of applying the standards already adopted by the Trempealeau County Board to the facts presented by AllEnergy's application, including the determination that sand mining at

25

this location is sanctioned and either necessary or desirable. But the Committee jettisoned those standards. And with respect to the exceedingly vague "public interest" and "wisdom" standards, it required AllEnergy to guess at what specific aspects of a sand mine would cause concern for its members. And then it required AllEnergy to guess at what might be necessary to allay those concerns. Wherever the arbitrary and capricious line might lie, "Guess what's in my head" certainly falls on the wrong side of it.

¶186 Because of this, we (along with AllEnergy) must guess at whether the imposition of conditions on AllEnergy's proposed sand mine would be capable of properly controlling the hazards incident to such a use. So our decision today does not actually review whether the Committee properly considered an application for a conditional use permit. It reviews whether the Committee expressed sufficient misgivings about mining for sand on the AllEnergy Property. Because the Committee addressed itself to a question outside its jurisdiction, and because its failure to complete its task made its decision arbitrary and capricious, we should have reversed the decision and remanded for further proceedings. Because we did not, I respectfully dissent.

¶187 I am authorized to state that Justices MICHAEL J. GABLEMAN and REBECCA GRASSL BRADLEY join this dissent.

26